Philip W. Alexander & others *vs.* Building Inspector of Provincetown & another.

Barnstable. January 6, 1966. — March 8, 1966.

Present: Wilkins, C.J., Whittemore, Cutter, Kirk, & Reardon, JJ.

*Zoning,* Building permit, Construction work, Amendment of by-law or ordinance.

In a mandamus proceeding to enforce an amendment to the zoning by-law of a town with respect to a motel erected on a certain lot purportedly pursuant to a permit issued more than ten months before the day the planning board first gave notice of a hearing on adoption of the amendment, a finding by the trial judge that no "construction work under" such permit had been commenced within six months after its issuance within G. L. c. 40A, § 11, was right where it appeared that during such period work done was merely planning, financing, and preparatory work; and a further finding by the judge that construction of the motel had not "lawfully begun" on the lot prior to the day the notice was given was right where it appeared that prior to that day work on the lot involved no more than preparation for new construction by removal of standing buildings and leveling of consequent debris. [374–375]

Where it appeared in a mandamus proceeding to enforce an amendment to the zoning by-law of a town that the planning board first gave notice of a hearing on adoption of the amendment on January 22, 1964, that a permit to erect a motel on a certain lot had been issued in the preceding March but that construction had not begun six months later, after the permittee asked if he needed a new permit and was told by the building inspector that the permit issued was good for one year and to go ahead, that the permit was suspended for lack of an engineer's seal on the plans, that the seal was put on the plans and the town counsel thereupon ruled on January 21, 1964, that the suspension had been "invalidated," that on the next day a letter from the inspector informed the permittee that the permit was reinstated as of January 21, 1964, and that by that day the permittee had arranged financing, acquired and prepared land

and razed or moved buildings, this court determined that the inspector's letter of January 22, 1964, was a permit within G. L. c. 40A, § 11, that its effective date was January 21, 1964, and that it was not affected by the zoning amendment.  [375–376]

PETITION for a writ of mandamus filed in the Superior Court on April 23, 1964.

The case was heard by *Coddaire, J.*

*Robert D. Hall* for the respondent Robert Roman.

*Richard W. Renehan* for the petitioners.

WHITTEMORE, J.   The issue on the appeal by the respondent Robert Roman from an order in mandamus for enforcement of the Provincetown zoning by-law is whether a motel erected by Roman and his wife[1] on a lot identified as No. 545 Commercial Street is subject to the provisions of an amendment of the zoning by-law adopted by a town meeting vote on March 9, 1964, and approved by the Attorney General on April 13, 1964, the first notice of the planning board hearing having been published on January 22, 1964.[2]   The evidence is before us.   The judge reported the material facts.

General Laws c. 40A, § 11, provides that, "in a town, no zoning by-law or amendment thereof shall affect any permit issued or any building or structure lawfully begun before notice of hearing before the planning board . . . or before the issuance of the warrant for the town meeting at which such by-law or amendment is adopted, whichever comes first; provided, that construction work under such a permit is commenced within six months after its issue, and the work, whether under such permit or otherwise lawfully begun, proceeds in good faith continuously to completion so far as is reasonably practicable under the circumstances. The issuance of a permit or the beginning of work upon a building or structure, or a change of use, after such notice has been given or such warrant has been issued, shall not

---

[1] Robert Roman and his wife, Florence, own the property as tenants by the entirety.   By stipulation Florence has agreed "to be bound by the decision of the court heretofore made, if sustained on appeal by the Supreme Judicial Court, to the same extent as if she had been originally a party respondent."

[2] The judge found that the publication was on January 23, 1964, but a newspaper cutting in evidence bears the date January 22, 1964.

Alexander *v.* Building Inspector of Provincetown.

justify the violation of a zoning . . . by-law or an amendment thereto subsequently adopted as the outcome of such hearing and in substantial accord with such notice or warrant; provided, the subsequent steps required for the adoption of such . . . by-law or amendment thereto are taken in their usual sequence without unnecessary or unreasonable delay."

The judge based his order that the writ issue on his finding that the motel in several respects does not comply with the amended by-law and on his rulings that to have the benefit of G. L. c. 40A, § 11, as applied to the permit for its construction, issued March 7, 1963, Roman was required to commence construction work within six months of March 7, and that the planning, financing, and preparatory work in the six months prior to September 7, 1963, did not satisfy the statutory requirement. At the request of this court the parties filed supplemental briefs on the question whether a reinstatement of the permit in January, 1964, was the issuing of a permit for purposes of the statute.

The permit to erect a four story motel on 545 Commercial Street was issued on March 7, 1963, to Robert Roman. It bears the legend: "This permit is void if not used in 90 days." In mid-August, 1963, Roman asked the building inspector if he needed a new permit and the inspector said he understood this permit to be good for one year and to go ahead. The building inspector suspended the permit on October 28, 1963, having been told by the Massachusetts State Association of Architects that the plans had not been designed by an engineer. The building inspector ascertained that although the plans filed did not bear the appropriate seal they had been prepared by a registered engineer and he informed the association of this by letter of November 1, 1963, adding that the permit had been suspended until the plans should be properly marked. The incumbent building inspector left office on that date. On January 21, 1964, the town counsel wrote the building inspector that an attorney had caused to be delivered to him plans for the motel to be constructed by Roman, that the plans showed

the seal of a professional engineer under date of October 2, 1963, and that inasmuch as the approved plans "have been submitted to the Building Inspector . . . any suspension has been invalidated." This opinion was handed to the building inspector who telephoned Roman and on the day following the call handed Roman a letter to the effect that the permit was reinstated as of January 21, 1964. The evidence justifies the conclusion that the letter was written on January 22. The evidence is inconclusive as to whether the telephone call to Roman was on January 21 or January 22, and whether the letter was delivered on January 22 or January 23.[3]

The project begun by the Romans in 1963 contemplated in addition to the motel on lot No. 545 Commercial Street, a parking space for at least fifty cars on land across the street to the north and also, on that other land, a swimming pool and another motel building. Two buildings on lot No. 545 and two of the buildings on the northerly lot were to be moved to other land identified as the Howard Johnson property.

Prior to September 7, 1963, plans were drawn, a mortgage was approved, there were other negotiations, the so called Howard Johnson site was made ready, structures on the northerly lot were in part dismantled, and Roman carried away some items of furnishings and also perhaps removed a sink from one of the buildings on lot No. 545.

In October, 1963, two buildings on the north side lot were razed to give space to move the buildings from No. 545, and

_____

[3] Exhibit 13, introduced from Roman's possession, is dated January 21, 1964, and reads: "This is to advise you that your suspended permit issued by the former Building Inspector Robert Gutzler, is reinstated as of January 21, 1964, due to an opinion rendered by Town Counsel . . . ." Exhibit 35, introduced from the building inspector's possession, also apparently a signed original, is dated January 22, 1964, and in place of the word "reinstated" contains the word "withdrawn." We agree with the petitioners' construction that Exhibit 35 was written the day of its date with the inadvertent use of "withdrawn" for "reinstated" and that Exhibit 13 was then prepared and signed to correct the mistake. Exhibit 35 is on paper and bears typewriting like that of the letter of October 28, 1963, from the building inspector's office which suspended the permit. Exhibit 13 is on paper of different size and texture and bears a different style of typing. The judge found that the permit was reinstated on January 21, 1964, but the date was not of critical importance to the ruling then made.

the four buildings (two each from No. 545 and from the north side lot) were moved. On October 16, 1963, a Provincetown newspaper published a sketch of the proposed motel with a news story stating that work would get under way next month. Citizen action seeking a change in zoning began in October, 1963. On January 4, 1964, a contractor using heavy bulldozers leveled off the piles of debris left by the building movers so that the "engineer . . . [could] go in to put in stakes."[4] On January 18, 1964, the mortgage to secure the financing was recorded. On January 15 a topographical survey was made for a sewage disposal plan for the whole project on both sides of Commercial Street. On January 22 the contractor went back to the site and began to excavate and take the excess soil to the north side lot.

The parties have stipulated that "if the reinstatement of the permit by the building inspector constituted the issuing of a permit for purposes of G. L. c. 40A, § 11, then construction work on Respondent Roman's motel was thereafter commenced within six months and the work proceeded in good faith continuously to completion so far as was reasonably practicable under the circumstances." This we construe as an agreement as to what the evidence shows. On June 16, 1964, Roman testified that the building was expected to be ready for occupancy within nine days.

Prior to January 22, 1964, when the notice in respect of the proposed zoning amendment was first published, the Romans had of course made a substantial beginning on their project. This had involved commitment of time, effort and money. But the work on the site involved no more than preparation for new construction by removal of standing buildings and leveling of consequent debris. We assume this was lawful work, notwithstanding the suspension of the permit for construction, but it would not support a finding that prior to January 22, 1964, a "building or structure [had been] lawfully begun" on the site. The

_____

[4] A surveyor "staked out the new motel and set out the setbacks" on February 11, 1964.

protection afforded by § 11 to an owner undertaking such preliminary work is in the provision in respect of a permit. Section 11 gives the holder of a permit issued at any time before the zoning notice a substantial period within which to do all preliminary work that does not involve construction and requires only that he get to the point of beginning "construction work" under the permit within six months after the issue of the permit. By the time the Romans got around to construction work as distinguished from demolition and site preparation the permit had lost its force under the statute as a document issued on March 7, 1963.

We agree with the judge that nothing done within six months of March 7, 1963, was "construction work under . . . [the] permit." Even if the work done had been significant under § 11, the evidence shows that it did not proceed continuously to the completion of a building so far as was reasonably practicable.

Undoubtedly, as the Romans point out, if they had applied for a new permit at any time prior to January 22, 1964, they would have been entitled to such a document and it would have been issued in due course. Their substantial commitment to the project to the extent of arranging the financing, acquiring and preparing another site for the standing buildings, and moving buildings to that site, strongly emphasized their right within the statutory policy to a permit with a current date that would give them six months from its date to get to the point of construction on No. 545 notwithstanding a zoning change. Earlier Roman had asked if he should take out a new permit and had been told that such a step was not necessary. It is a reasonable inference from town counsel's letter of January 22, 1964, that prior to that date Roman or his counsel had consulted the building inspector to the end that the permit would be free of the suspension of October 28, 1963, and Roman would again have, as he supposed, a valid permit. We are disinclined to let his substantive rights turn on his omission to ask for a new permit rather than for reinstatement.

The January 22, 1964, letter gave the permit new life; it

was written notice from the building inspector that Roman was permitted to proceed with the work described in the original document of March 7, 1963. It satisfied the substantive intent of § 11, and was, we think, a permit as of its effective date for purposes of that statute.

We hold also that its effective date was January 21, 1964, as the building inspector declared. That was the day on which town counsel ruled that "any suspension has [heretofore] been invalidated." From and after that ruling at the latest the building inspector had no right to withhold permission for construction. We discern no risk, such as the petitioners suggest, of abuse in other cases because of this ruling. Plainly, building inspectors may not predate permits to give an advantage to a new applicant for a permit in a race to obtain the generous protection for a new project that the statute now gives to holders in good faith of a permit taken out before the first zoning notice.

The petitioners have shown nothing for our consideration in respect of their appeal.

The order that the writ issue is reversed. An order is to enter in the Superior Court dismissing the petition.

*So ordered.*