ROY C. PAPALIA, trustee, *vs.* INSPECTOR OF BUILDINGS OF WATERTOWN & another.

Middlesex.    April 7, 1966. — June 16, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Permit. Building. Zoning,* Amendment of by-law or ordinance. *Words,* "Good faith."

Where a building permit for construction of an apartment house in a town was issued before notice of a planning board hearing on a proposal for a zoning by-law amendment which would preclude the erection of the apartment house and before issuance of the warrant for a town meeting at which the amendment was adopted, and some construction work was done shortly before expiration of six months after the issuance of the permit, but because of domestic difficulties between the permittee and his wife and illness on his part the work ceased in a few days and he did not seek to resume it until about eight months thereafter, it was held that the work did not proceed "continuously to completion so far as . . . [was] reasonably practicable under the circumstances" within G. L. c. 40A, § 11, even though the permittee acted in good faith, and that the permit had become void

BILL IN EQUITY filed in the Superior Court on May 19, 1965.

The suit was heard by *Taveira, J.*

. *Lawrence H. Adler* (*Fred B. Wilcon* with him) for the plaintiff.

*Philip F. Grogan,* Town Counsel, for the defendants.

SPIEGEL, J. This is a bill in equity for a declaratory decree regarding the validity of a permit to build an apart-

ment house at No. 250 Mount Auburn Street in Watertown. The trial judge made "Findings, Rulings and Order for Decree." The plaintiff appealed from a final decree declaring that the building permit "is now void and no longer in full force and effect."

The judge found the following facts. The plaintiff hired an architect and a building contractor and arranged for a bank loan to finance the construction of an apartment building. On February 28, 1964, permits were issued to the plaintiff for the razing of the existing single family dwelling in which he and his wife lived and the construction of an apartment building on the locus. "At about this time he and his wife were having some domestic difficulties and he made several attempts to find a place for her and the children to live. . . . [N]othing met with her approval. Consequently she remained in occupancy of the subject property." The permits were "issued before any notice of hearing of a proposed change in the zoning by-laws which would preclude the erection of the proposed apartment house and before the issuance of the warrant for the town meeting at which such change in the zoning by-laws was adopted." In the beginning of August, with the plaintiff's home still intact, "the lines of the proposed multi-unit building were staked out at a cost of eighty-three dollars ($83.00). About August 14th, excavation to make way for footings on the easterly and southerly portions of the premises was commenced. This took place over a period of several days at a cost of two hundred and ten dollars ($210.00). Then on or about August 19th, forms were set and footings along the easterly and in a small part along the southerly portions of the premises were poured at a cost of two hundred twenty-five dollars ($225.00)." No work has been done on the apartment building since August 19. In September or October the plaintiff "began to feel symptoms of what was feared to be a possible malignancy of his left foot and in November he was hospitalized for twenty-three days after which on or about the beginning of December, on Doctor's advice, he went to Florida. At about this time,

or shortly after, the domestic problem between . . . [the plaintiff and his wife] resulted in Probate Court litigation and in January 1965 an order was issued that . . . [the wife] was to have the use of the house. After this . . . [the plaintiff] tried constantly to locate a home for his wife and children so that he could raze or move the house. Finally she moved out after which he was in the process of attempting to arrange to raze the house when he received the letter of April 20th from . . . [the building inspector] notifying him that it was . . . [the inspector's] opinion that the building permit was void . . . .'' ''At all times since commencing construction . . . [the plaintiff] has acted reasonably and in good faith in a constant endeavor to complete the work allowed by said permit to the best of his ability under the circumstances in which he found himself.''

We agree with the judge that ''the decisive question is whether there has been compliance with the provisions of General Laws, Chapter 40A, § 11.'' The pertinent portion of the statute provides that, '' [N]o zoning by-law or amendment thereof shall affect any permit issued or any building or structure lawfully begun before notice of hearing before the planning board . . . has first been given or before the issuance of the warrant for the town meeting at which such by-law or amendment is adopted, whichever comes first; provided, that construction work under such a permit is commenced within six months after its issue, and the work, whether under such permit or otherwise lawfully begun, proceeds in good faith continuously to completion so far as is reasonably practicable under the circumstances.''

The judge ruled that '' [t]he reasonable interpretation of the words of the statute is that . . . [they] refer to such delays as are a normal and unavoidable part of the construction process,'' and ''that it was not within the contemplated meaning of the statute to consider personal problems and difficulties such as were advanced in this case as the cause of delay.''

The plaintiff contends that ''the protection of his permit from subsequent zoning changes was quite within the legis-

lative purpose when Section 11 was enacted because . . . [he] acted at all relevant times *in good faith* and . . . pressed the work toward completion as *rapidly* as was 'reasonably practicable under the circumstances' in which . . . [he] found himself.'' He argues that the phrase "good faith" as used in the statute would be irrelevant unless the statute was "concerned with the personal problems or difficulties of the permit holder.''

Under the plaintiff's interpretation, "good faith" is a limitation on the requirement that the work proceed "continuously to completion so far as is reasonably practicable under the circumstances.'' However, we believe that "good faith" is an additional requirement. The purpose of the requirement of "good faith" is to prevent the possibility of a permit holder evading the intent of the statute by some subterfuge, as, for example, doing token work on the site.

The plaintiff also contends that the Legislature, by requiring that the work proceed "so far as is reasonably practicable under the circumstances,'' intended "to avoid invalidating a permit where delay after the start of construction work came about through no *fault* of the holder.''

We do not believe that the Legislature intended the courts in a case involving a zoning by-law to hear evidence relating to marital problems. We also consider it unlikely that the Legislature intended a permit to remain valid until the holder of the permit recovered from an illness of indefinite duration. The apparent purpose of the statute is to prevent the existence of a permanent license to construct a building for a nonconforming use. The normal delays of construction are generally of comparatively brief duration, but personal misfortunes may persist for an indeterminate number of years. Thus, if personal difficulties operate to preserve the validity of a permit, the permit holder could have a license of indefinite duration.[1] It seems to us that

---

[1] We note that we have previously construed the phrase "as soon as practicable" to mean within a reasonable time. *Depot Cafe Inc.* v. *Century Indem. Co.* 321 Mass. 220, 224. *Segal* v. *Aetna Cas. & Sur. Co.* 337 Mass. 185, 187–188. See *Bloom's Case*, 222 Mass. 434, 435. Such language seems to suggest a span of time which is not unduly prolonged.

the ''circumstances'' to which the statute refers concern incidents of the construction process and not the domestic situation or personal difficulties of the permit holder. We have reviewed the legislative history presented by the plaintiff and find nothing therein inconsistent with this conclusion.

We are of opinion that the judge's interpretation of the statute was correct.

*Decree affirmed.*