STEWART J. SMITH vs. BOARD OF APPEALS OF
BROOKLINE & others.

Norfolk.    May 13, 1974. — August 28, 1974.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Zoning*, Building permit, Construction work, Amendment of by-law or
ordinance.

Assuming that a building permit was issued in a town on a certain date,
it did not, under G. L. c. 40A, § 11, prevent amendments of the town's
zoning by-law from being applicable to the building project although
notice of hearing on the amendments was given, and they were
adopted, after the issuance of the permit, where construction work
under the permit did not start within six months after its is-
suance. [199-200]
There was no merit in a contention that the six-month period after
issuance of a building permit within which construction must start in
order to obtain the protection of the permit afforded by G. L. c. 40A,
§ 11, against subsequent amendments of the local zoning by-law
should be tolled by reason of pendency of litigation challenging the
validity of a zoning special permit on which the plans for the building
were based originally where the landowner, during the six months, as
he could have from the outset, substituted new plans not based on the
special permit and thereby abandoned the special permit and
terminated the litigation. [201-202]

BILL IN EQUITY filed in the Superior Court on August 24,
1972.

The suit was heard by *Abrams, J.*

*Kenneth H. Zimble* for James D. Pratt.

*David M. Roseman* for the Board of Appeals of Brook-
line.

*Rudolph Kass* for the Brookline Housing Associates.

*Lawrence D. Shubow* for the plaintiff.

REARDON, J.    A final decree was entered in the Superior
Court annulling a decision of the board of appeals of
Brookline (board) which had denied the plaintiff's appeal

from the granting of a building permit by the building
commissioner of Brookline. The board, the Brookline
Housing Associates (the owner), and James D. Pratt[1]
brought this appeal. The trial judge made findings of fact,
rulings of law, an order for decree, and a report of material
facts. The evidence is reported.

The building which is the subject of this dispute was
planned as a nine-story, 411 unit apartment building
located at 175 Freeman Street in Brookline. It is agreed that
the building does not conform to two new provisions of the
town zoning by-law concerning environmental design re-
view and parking requirements. The defendants claim that
notwithstanding this nonconformance the building is pro-
tected under G. L. c. 40A, § 11, inserted by St. 1954, c. 368,
§ 2, since it was constructed pursuant to a "permit is-
sued ... before notice of hearing before the planning
board ... [on the amendments to the zoning by-law adding
the relevant provisions and] construction work under such
a permit ... [was] commenced within six months after its
issue, and the work ... [proceeded] in good faith contin-
uously to completion ...." The notice of the hearing before
the planning board was given on October 14, 1971. The date
on which the building permit was issued is in dispute.

In outline, the relevant sequence of events was as follows.
On December 2, 1968, the board granted to the owner's
predecessor a special permit allowing construction of an
apartment building (different in dimension and design
from the one which was eventually built) which did not
conform to the height and floor area ratio requirements of
the zoning by-law. On November 2, 1970, the then owner
filed an application for a building permit for an apartment
building based on plans which took advantage of the
"bonuses" (dimensional variations from the zoning by-
law) of the 1968 special permit. On November 9, 1970, a suit
was instituted challenging the 1968 special permit. On
January 28, 1971, the building commissioner responded to

[1] James D. Pratt is the builder to whom the building permit of May 26, 1972,
was issued.

the permit application in a letter which, under authority of § 207 d of the Brookline building code, gave permission "for excavation, footings and the erection of foundation forms," and which noted that upon verification of the location of the foundation and compliance with the zoning by-law and building code "a permit may issue for completion." Section 207 d provides for issuance of "excavation permits" under which the holder "shall proceed at his own risk and without assurance that a permit for the super-structure will be granted." On June 15, 1971, the commissioner wrote a practically identical letter noting it was "an answer to the request of June 11, 1971 for the extension of the excavation permit." In August, 1971, at roughly the same time as the transfer to the present owners, new plans were submitted to the chief building plan examiner and building inspector of Brookline. These plans were for the building upon which construction was eventually begun and did not take advantage of the 1968 special permit provisions. After reviewing these plans the building inspector gave oral permission to proceed with construction. On October 14, 1971, notice was given of a hearing before the planning board on the proposed new zoning provisions. On October 20, 1971, another application for a building permit was filed based on the new plans. On the same day the commissioner issued another letter substantially identical to those of January 28, 1971, and June 15, 1971. On December 13, 1971, the commissioner replied to a December 9, 1971, request for a six-month extension of the permit. Instead he stated that "the time of starting this project may be extended for a period of 90 days from this date." On May 26, 1972, the building commissioner wrote a letter in which he stated that he had granted a permit to construct the apartment building. On the same date he signed the reverse side of the October, 1971, permit application under the heading, "Permit Granted." On June 2, 1972, the building department sent notice of the application to other municipal departments.

For the building to have the protection of G. L. c. 40A, § 11, it must appear that a permit was issued prior to

October 14, 1971, and that construction under that permit commenced within six months of its issuance. There is serious question, given the course of events described, whether either the letter of January 28, 1971, or the letter of June 15, 1971, each issued under authority of § 207 d, was the type of permit contemplated by the statute.[2] However, we need not decide either whether such excavation permits were sufficient to win the protection of the statute or whether the subsequent submission of changed plans and new permit application indicate that these permits were abandoned. Even if we assume arguendo that the letter of June 15, 1971, was in fact such a permit for the building as to come under G. L. c. 40A, § 11, no construction work was commenced within six months of its issuance. The trial judge found " 'actual construction work' was not commenced until after December 15, 1971." She further found that there was no excavation work before the middle of December. Only one witness testified that he observed excavation on the site prior to December 15, 1971, and the trial judge "based upon . . . [her] observations of the witnesses and their testimony" found that the testimony was "vague and not credible." The documentary evidence on the matter was in conflict on this point but there was sufficient evidence to support the judge's findings. It is, of course, our duty to examine the evidence and to make our own judgment upon it. But we are to accord due weight to the trial judge's findings and will not reverse them unless they are plainly wrong. *Allen* v. *Moushegian,* 320 Mass. 746, 752 (1947). *Richmond Bros. Inc.* v. *Westinghouse Bdcst. Co. Inc.* 357 Mass. 106, 109 (1970). On the evidence, we cannot say that the judge was plainly wrong in her finding as to the date upon which construction began.

---

[2] Nor could the submission of the new plans on August 5 and August 13, 1971, and their oral approval constitute a permit. No application was filed, no fee was paid, and no document of any kind was issued. See Brookline Building Code, §§ 206 b and 207 a. Viewed in context, it is clear that none of the parties seriously intended this. It is inconceivable that such an informal procedure could alone create the fixed expectations that the statute was designed to protect.

Moreover, even upon the view of the evidence most favorable to the defendants, the most that occurred prior to December 15, 1971, was preliminary excavation. There is question whether this amounts to the commencement of construction called for by the statute. Not every expenditure of "time, effort and money" is enough to qualify as construction which is to be distinguished from "demolition and site preparation." *Alexander* v. *Building Inspector of Provincetown,* 350 Mass. 370, 374-375 (1966). See *Murphy* v. *Selectmen of Manchester,* 1 Mass. App. Ct. 407, 409 (1973). However, because of the judge's findings we need not consider exactly when preparation ends and construction begins.

The defendants argue that the statutory six-month period in which construction must begin should be tolled in this case because "real practical impediments" to starting construction prevented them from taking advantage of the six-month period. *Belfer* v. *Building Commr. of Boston,* 363 Mass. 439, 444-445 (1973). They argue that the pendency of the challenge to the 1968 special permit and the possibility that the deviations from the zoning law authorized by that permit would be lost made it impracticable to start construction until August, 1971, when the owner altered its plans so as to conform to the zoning by-law without the assistance of the zoning "bonuses" of the special permit. It is agreed that construction began within six months of August 5 and 13, 1971, when the new plans were submitted. The *Belfer* case, upon which the defendants rely, held that a zoning code provision which caused a variance to expire within two years if not used must be tolled while the variance itself is the subject of an appeal. We held that there must be relief from such time limitations so long as there are "real practical impediments to the use of a benefit." *Ibid.* We think the reasoning of that case applies as well to the commencement of construction within the six months necessary for the protection of G. L. c. 40A, § 11. See *Murphy* v. *Selectmen of Manchester,*

*supra.* But this does not mean that every inconvenience or risk may extend the relevant period. The period in the *Belfer* case was tolled so that the plaintiffs might retain the benefit of their variance if the appeal resulted in a determination that it was properly granted. *Ibid.* Likewise, if the owner here had successfully resisted the challenge to the special permit and had then sought to construct the building under it according to the original plans, a strong claim for applying the rule of the *Belfer* case would have been made out. But the record shows that the litigation was terminated by the owner who abandoned its special permit and substituted new plans. This means of terminating its difficulties was available to it from the very outset. The type of "impediment" to which reference was had in the *Belfer* case was not one which the party seeking an exception to the statute had the power to remove at will. See *Murphy* v. *Selectmen of Manchester, supra,* at 410. Indeed, there was never any impediment to the construction of the building which eventually commenced since it in no way utilized the special permit which was the subject of litigation.

General Laws c. 40A, § 11, should be interpreted so as to afford protection from zoning changes to good faith holders of building permits taken out before the first zoning notice who proceed with some diligence to build under such permits. See *Alexander* v. *Building Inspector of Provincetown,* 350 Mass. 370, 375-376 (1966). Here the owner failed to act under the permit in a manner which might have given it that protection within the statutory period. The owner thus falls outside the policy of the statute, which must not be allowed to create "a permanent license to construct a building for a nonconforming use." *Papalia* v. *Inspector of Bldgs. of Watertown,* 351 Mass. 176, 179 (1966).

*Decree affirmed.*