APPEALS COURT 
 
 PALMER RENEWABLE ENERGY, LLC vs. ZONING BOARD OF APPEALS OF SPRINGFIELD & another[1]

 
 Docket:
 24-P-136
 
 
 Dates:
 October 9, 2024 – May 7, 2025
 
 
 Present:
 Meade, Walsh, & Smyth, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Building Permit. Permit. Notice, Timeliness. Zoning, Building permit, Appeal, Board of appeals: decision, Timeliness of appeal. Land Court, Judicial discretion, Jurisdiction. Jurisdiction, Zoning. Statute, Construction, Emergency law. Practice, Civil, Zoning appeal, Summary judgment.
 
 

       Civil action commenced in the Land Court
Department on June 17, 2021. 
      The case was heard by Gordon H. Piper, J.,
on motions for summary judgment.
      Peter F. Durning (Thomas A. Mackie also
present) for the plaintiff.
      Alexandra E. St. Pierre (Suhasini Ghosh
also present) for city council of Springfield.
      WALSH, J. 
In response to the Great Recession,[2] in 2010 the Legislature enacted
the so-called "permit extension act," St. 2010, c. 240,
§ 173, an emergency act designed to "provide forthwith a
business-friendly environment that [would] stimulate job growth and improve the
ease with which businesses can operate in the markets they serve."  St. 2010, c. 240, preamble.  One of the measures in the act, as amended in
2012, extended the expiration date of permits and other local and State
approvals issued between August 15, 2008, and August 15, 2012 (the qualifying
period), for four years "in addition to the lawful term of the
approval" (emphasis added). 
St. 2010, c. 240, § 173 (b) (1), as amended by
St. 2012, c. 238, §§ 74, 75. 
It is undisputed that the plaintiff, Palmer Renewable Energy, LLC
(Palmer), was granted two building permits by the city of Springfield's
building commissioner (building commissioner) in 2011, during the qualifying
period, that were thereafter the subject of lengthy litigation.  At the heart of this dispute is whether the
building permits have expired.  That
determination turns on whether the phrase "in addition to the lawful term
of the approval" means that the four-year extension contained in the 2012
amendment of the permit extension act runs concurrently with or consecutively
from any equitable tolling period due to litigation (litigation tolling
period).
      A judge of the Land Court determined that
the litigation tolling period and the four-year extension period run
concurrently and invalidated the permits on the grounds that they had expired;
we conclude, to the contrary, that the four-year extension of the building
permits began to run after the term of the permit as extended by litigation
tolling.  We also conclude that the
litigation tolling period began in this case when the city council (city or
city council) and other opponents appealed to the zoning board of appeals
(board) from the building commissioner's decision to issue the permits.[3]  Accordingly, we reverse the judgment.
      Background.  The background facts are undisputed.  On November 15, 2011, the building
commissioner granted building permits to Palmer to begin construction of a
biomass-fired power plant on industrially zoned property in the city of
Springfield.[4]  We discern no expiration
date on the face of the building permits themselves.  The judge and all of the parties have treated
the permits as having a term of 180 days and we shall do so as well.[5]
      Within a month of the issuance of the
permits, the city and other opponents filed separate appeals with the board on
December 12, 2011.  The board voted to
revoke the building permits on January 25, 2012, issued a written decision of
the vote on February 27, 2012, and filed it with the city clerk on March 8,
2012.  Palmer filed an appeal with the
Land Court on March 26, 2012.  On August
14, 2014, the Land Court reversed the board's decision and reinstated the
building permits.  The city and other
opponents appealed and on September 8, 2015, a panel of this court affirmed the
decision of the Land Court.  See Palmer
Renewable Energy, LLC v. Zoning Bd. of Appeals of Springfield, 88 Mass. App.
Ct. 1104 (2015).  The application of the
city and other opponents for further appellate review was denied on October 30,
2015.  See 473 Mass. 1105 (2015).  Thus, the initial phase of litigation over
the building permits ended on October 30, 2015.[6]
      Five years later, on October 14, 2020,
twelve members of the city council requested for the second time, see note 5,
supra, that the building inspector issue a cease and desist order on Palmer's
construction of the biomass facility, contending that the building permits had
expired (2020 enforcement request).  The
building commissioner denied the request, reasoning that the permits had not
expired and attached a copy of Palmer's continuous construction report as of
February 22, 2021.[7]  Members of the
city council appealed to the board and on May 5, 2021, the board voted to grant
the city's petition and once again revoked the building permits.  On May 28, 2021, the board issued a written
decision revoking the building permits.
      Palmer appealed to the Land Court, naming
the city and the board as defendants.  A
judge of the Land Court affirmed the board's decision on summary judgment,[8]
reasoning (1) that the phrase "lawful term of the approval" is
ambiguous whether it includes litigation tolling periods; (2) the purpose of
the permit extension act was to respond in an immediate way to the Great
Recession; and (3) interpreting the statute to allow litigation tolling to
further extend the four-year extension is contrary to the "immediate"
need sought to be met.  The judge
concluded that, despite the language "in addition to," the permit
extension act ran concurrently with any litigation tolling and the permits had
expired no later than May 13, 2016. 
Because of the result he reached, understandably the judge did not
consider whether the building permits were equitably tolled.  Palmer and the city cross-appeal.
      Discussion.  This case turns on principles of statutory
interpretation and the interplay between (1) the extension provided in the
permit extension act, (2) the litigation tolling period recognized when permits
affecting land are challenged at the local level and litigated in our courts,
and (3) the permit extension provided in response to the COVID-19 pandemic and
resulting state of emergency, see St. 2020, c. 53, § 17
(COVID-19 emergency act).
      1. 
Lawful extensions of building permits. 
We first comment briefly on some of the recognized ways the original
term of a building permit may lawfully be extended.  Courts consistently have applied principles
of equitable tolling to ensure that a permit holder is not forced to make
difficult economic decisions when litigation "clearly attributable to
others" has the effect of eating up the time a permit remains valid.  See Belfer v. Building Comm'r of Boston, 363
Mass. 439, 444-445 (1973) (appeal from variance creates real practical
impediments to use of benefit and unless appeal tolls time period variance
remains effective, many variances would be meaningless); M. DeMatteo Constr.
Co. v. Board of Appeals of Hingham, 3 Mass. App. Ct. 446, 458 (1975) (duration
of zoning freeze paused when building commissioner ordered plaintiff to cease
operations, noting "common sense practical consideration militating
against a course of action under attack, until the doubts were resolved"
[quotation and citation omitted]). 
Indeed, while the statutory provision directed to special permits
specifically provides for a term of no more than three years "which shall
not include such time required to pursue or await the termination of an appeal
referred to in section seventeen," G. L. c. 40A, § 9,
courts have applied principles of equitable tolling even in the absence of
statutory authority.  See Belfer, supra;
M. DeMatteo Constr. Co., supra.  Here,
although they may disagree as to when the tolling began, neither party disputes
that the term of the permits was tolled during the legal challenges to the
building permits.  See Cape Ann Land Dev.
Corp. v. Gloucester, 371 Mass. 19, 23 n.5 (1976), S.C., 374 Mass. 825 (1978)
(Cape Ann) (zoning freeze in effect from date city denied building permit until
disposition of all bona fide appeals from denial or grant).  Cf. Smith v. Board of Appeals of Brookline,
366 Mass. 197, 201 (1974) ("there must be relief" from six-month
limitation to commence construction when "real practical impediments to
the use of a benefit" arise [citation omitted]).
      In addition to tolling due to litigation,
some permits and approvals may be extended beyond their original term by
complying with certain statutory or local regulations.  See G. L. c. 40A, § 10
(providing that permit granting authority may extend variance for period up to
six months on timely application for extension); Woods v. Newton, 351 Mass. 98,
103-104 (1966) (local ordinance granted city right to extend time for
exercising rights under building permit). 
In fact, both the current version of the State building code and the
version in effect when the permits were granted authorized the building
official to grant one or more extensions of time for periods of not more than
180 days each on demonstrated justifiable cause.  See 780 Code Mass. Regs. § 105.5 (2009
& 2017).
      "In interpreting a statute, we
presume that when the Legislature enacts a law it is aware of the statutory and
common law that governed the matter in which it legislates."  Globe Newspaper Co., petitioner, 461 Mass.
113, 117 (2011).  See Providence &
Worcester R.R. Co. v. Energy Facilities Siting Bd., 453 Mass. 135, 144 (2009)
(Legislature presumed to be aware of our prior decisions).  Here, we presume, therefore, that the
Legislature was aware when it enacted the permit extension act that the
original term of a permit or approval may be extended in a variety of ways --
including by litigation tolling.
      2. 
The permit extension act.  The
permit extension act provides, "Notwithstanding any general or special law
to the contrary, certain regulatory approvals are hereby extended as provided
in this section."  St. 2010,
c. 240, § 173.  Pursuant to
St. 2012, c. 238, §§ 74, 75, the tolling period for permits
issued between August 15, 2008, and August 15, 2012, was extended from two
years to four years "in addition to the lawful term of the approval"
(emphasis added).  St. 2010,
c. 240, § 173 (b) (1). 
There is no dispute that the permit extension act applies to the
building permits at issue -- that is, that they qualify as "certain
regulatory approvals." 
St. 2010, c. 240, § 173. 
The dispute is centered on whether the phrase "in addition to the
lawful term of the approval" means that the four-year extension provided
in the permit extension act runs concurrently with or consecutive to any period
of litigation tolling.
      When interpreting a statute, "we begin
with the language of the statute, [which] . . . 'is the principal
source of insight into legislative purpose'" (citation omitted).  Local 589, Amalgamated Transit Union v.
Massachusetts Bay Transp. Auth., 392 Mass. 407, 415 (1984).  By statute, we must construe words and
phrases "according to the common and approved usage of the
language."  G. L. c. 4,
§ 6.  Moreover, "[a] basic
tenet of statutory construction requires that a statute 'be construed "so
that effect is given to all its provisions, so that no part will be inoperative
or superfluous."'"  Wolfe v.
Gormally, 440 Mass. 699, 704 (2004), quoting Bankers Life & Cas. Co. v.
Commissioner of Ins., 427 Mass. 136, 140 (1998).
      While the city contends that the phrase in
the statute referring to "in addition to the lawful term of the
approval" is ambiguous, statutes are not ambiguous "simply because
the parties have developed different interpretations of them," Basis Tech.
Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008); rather,
"[g]enuine ambiguity requires language 'susceptible of more than one
meaning [so that] reasonably intelligent persons would differ as to which
meaning is the proper one'" (citation omitted).  Id. at 36-37. 
Examining the language of the statute, we are not convinced that it is
ambiguous.
      Rather than limiting the application of
the permit extension act to extend from the "original term of the
permit," the Legislature chose to use the modifier
"lawful."  "Our
responsibility is to interpret the [statute] as written, assigning to each word
and phrase its ordinary meaning unless the context requires otherwise and
attaching significance to every word unless it produces an irrational
result."  Hassey v. Hassey, 85 Mass.
App. Ct. 518, 525 (2014).  When we
consider whether a term of approval that has been extended, whether by
equitable tolling due to litigation or by exercising a statutory or regulatory
mechanism to extend an approval, falls within the broad phrase "lawful
term of the approval," the answer is an unequivocal yes.  There is no language in the statute that would
allow us to read into the phrase "lawful term of the approval" an
exception for terms that have been extended by the equitable concept of
"litigation tolling."  In the
absence of any provision to the contrary, the broadly termed phrase
"lawful term of the approval" plainly includes a term of approval
that has been extended by litigation; and the plain language provides that the
four-year extension is "in addition" to the lawful term.  St. 2010, c. 240, § 173 (b) (1).  Here, the judge (and presumably the board)
viewed the statute as ambiguous rather than "very sweeping," but we
discern nothing in the statute that warrants such an interpretation.  Ayers v. Massachusetts Blue Cross, Inc., 4
Mass. App. Ct. 530, 534 (1976).[9]
      To the extent we owe deference to the
board's interpretation of the statutes it enforces, an "incorrect
interpretation of a statute . . . is not entitled to deference"
(citation omitted).  Shirley Wayside Ltd.
Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012).  If a statute is unambiguous, "we enforce
the statute according to its plain wording 'unless a literal construction would
yield an absurd or unworkable result,'" id. at 477, quoting Adoption of
Daisy, 460 Mass. 72, 76 (2011), and we reject the city's contention that an
absurd result occurs here.  We recognize
that the length of time that the permits have been valid is extraordinary.  However, it must also be recognized that the
lengthy validity of the building permits at issue is the consequence of the
city's unsuccessful challenges to the permits, the statutorily imposed length
of the extension under the permit extension act, and the Legislature's response
to a worldwide health emergency.  While
we agree that few could have anticipated the compilation of events that have
extended the validity of the 2011 building permits to the time this appeal was
sought, under these extraordinary circumstances Palmer is entitled to the
benefits of the statutory scheme the Legislature enacted.  Had it chosen to do so, the Legislature could
have placed a definitive end date on the extensions under the permit extension
act; it did not do so.  Because the
permit extension act is not ambiguous and its plain language provides that the
extension period contained in the permit extension act is "in addition
to" the lawful term of a permit that has been extended by litigation, we
need go no further in examining the Legislature's intent.
      3. 
When does litigation tolling begin? 
In the unusual circumstances of this case, when the equitable tolling of
the 180-day term of the building permits is deemed to have begun has a
significant impact on the expiration date of the permits.  See Cape Ann, 371 Mass. at 23 n.5
(recognizing importance of date from which zoning freeze was suspended).  That is because if, as Palmer argues, the
tolling started when the city filed its appeal to the board from the grant of
the building permits, then with application of litigation tolling, the permit
extension act, and the COVID-19 emergency act, the building permit had not
lapsed when the city asked the building inspector to enforce the zoning
ordinance and revoke the permits.  If, as
the city argues, tolling started when the board revoked the permits, then they
would have expired before the city asked the building inspector to enforce the
zoning bylaw and revoke the permits.
      Our cases have limited relief from time
limitations to instances when "there are 'real practical impediments to
the use of a benefit.'"  Smith, 366 Mass.
at 201, quoting Belfer, 363 Mass. at 444. 
Indeed, not "every inconvenience or risk" extends the relevant
period.  Smith, supra at 202.  But an appeal from the grant of a permit has
been recognized consistently as a real practical impediment, provided there is
no showing that the appeal "was collusively made for the purpose of
extending the life of the" permit. 
Belfer, supra at 445.  See Cape
Ann, 371 Mass. at 23 n.5.  In Belfer,
supra, legal challenges to a variance were at issue.  The board makes decisions regarding variances
at the local level such that there is no intermediate step, unlike this case,
in which the building commissioner granted the permit, but an appeal to the
board resulted in revocation of the permits. 
Contrast id. at 440.  Thus we must
consider whether the city's appeal from the building commissioner's decision in
2011 actually constituted a practical impediment or whether the impediment did
not begin until the permit was revoked. 
In other words, is an appeal at the local level of the approval of a
permit enough to cause a real impediment to use of the permit?
      Cape Ann instructs that, in circumstances
where a building permit was denied by the building commissioner and the
developer appealed to the zoning board and then to the Superior Court, the
suspension of the running of the three-year zoning freeze runs "from the
date of the denial of the building permit until the disposition of all bona
fide appeals from the denial (or granting) of a special permit from the city
council."  371 Mass. at 23 n.5.  Thus, the running of the zoning freeze was
suspended from the first decision at the local level even though an appeal to
the local board followed.  We recognize
that the denial of a building permit is obviously different from the grant of a
building permit and because the permit was denied, it makes sense to start the
suspension from denial of the building permit. 
Nonetheless, Cape Ann at least stands for the proposition that there is
no blanket prohibition from suspending a time period from the date of a
decision at the local level.  Moreover,
Cape Ann also recognized that there may be circumstances where the suspension
would start even earlier than the date of the denial.  See id.
      The "'common sense practical
consideration' militating against a course of action under attack, until the
doubts were resolved," M. DeMatteo Constr. Co., 3 Mass. App. Ct. at 458,
quoting Woods, 351 Mass. at 104, that forms the foundation of litigation
tolling suggests that practical considerations dictate the start of
tolling.  The Supreme Judicial Court in
Smith, 366 Mass. at 202, recognized that tolling allows the plaintiff to
"retain the benefit of [the permit] if the appeal resulted in a
determination that it was properly granted," and recognized that the type
of "impediment" necessary to toll a term of a permit is not one that
the plaintiff had the power to remove at will. 
There is no suggestion here that Palmer could have done anything to
avoid the city's appeal.  In the context
of this case where the city challenged the biomass-fired power plant, a large
and expensive project, by contending that the project required a special permit
because it entailed "incineration," see Palmer Renewable Energy, LLC,
88 Mass. App. Ct. 1104, we conclude that the city's appeal of the permit to the
board of appeals suspended the running of the term of the permit.
      Where the building permits were issued on
November 15, 2011, and the city filed its appeal with the board from that
decision on December 12, 2011, only twenty-seven days had run on the 180-day
term of the building permits and 153 days were remaining.  The litigation finally terminated on October
30, 2015; adding 153 days to that date meant the permits' lawful term would have
ended on March 31, 2016.  The permit
extension act adds four years to that date, extending the permits' validity
through March 31, 2020.  In response to
the COVID-19 pandemic, the Legislature enacted a statute that tolled permits
that were in effect on March 10, 2020.[10] 
Thus, the permits were still valid on October 14, 2020, when the city
made its 2020 enforcement request that spurred the instant litigation.  The judgment affirming the invalidation of
the permits must be reversed.
      4. 
Requirements of G. L. c. 40A, § 6.  The city argues that even if the statutory
extension and the litigation tolling period run consecutively, the permits
expired because G. L. c. 40A, § 6, requires construction
pursuant to a building permit to begin within one year of the date of issuance
and to continue "through to completion as continuously and expeditiously
as is reasonable."  In addition, the
city notes that the State building code requires commencement of construction
within 180 days and no pauses of work of 180 days or more after
commencement.  The consequence of
Palmer's failure to comply with § 6, the city contends, is that Palmer had
to comply with the 2013 zoning amendment that requires a special permit for
projects as large as the project at issue.
      It is settled that at the very least,
relief from such a time limitation applies during litigation of the building
permits that were the subject of an appeal. 
See Smith, 366 Mass. at 201 (six-month limitation to commence
construction tolled during litigation of permit).  Importantly, the permit extension act
specifically provides that it applies to extend certain approvals,
"[n]otwithstanding any general or special law to the contrary."  St. 210, c. 240, § 173.  Thus, to the extent that the provisions of
G. L. c. 40A, § 6, and the State building code conflict with the
permit extension act as to the expiration of the building permits at issue, the
permit extension act prevails.[11]
      While we are not insensitive to the
important goals of the continuous construction provision contained in
G. L. c. 40A, § 6, particularly with regard to compliance with
subsequent changes in the local zoning regulation, the Legislature saw fit to
extend the permits at issue for an additional four years from what otherwise
would have been the lawful term of the permit and it did so notwithstanding
G. L. c. 40A, § 6.  The
Legislature granted an additional extension due to the COVID-19 emergency.  It is not for us to question or undermine the
Legislature's response to the Great Recession or to the COVID-19 emergency.
      5. 
Jurisdiction.  The city argues
that the judge lacked jurisdiction to consider Palmer's appeal because Palmer
did not file a timely notice of appeal from the board's modified decision.  At the first case management conference on
July 12, 2021, the judge invited the parties to move before July 31, 2021, for
remand for the limited purpose of allowing the board to explain its
reasoning.  After the board filed a
motion to remand, the judge ordered a limited remand and indicated that a
public meeting, but not a public hearing, was warranted.  The judge further ordered 
"that the
court [shall] retain jurisdiction over this case, including over any appeals
which may be taken (or other actions brought) from or relating to the Board's
further proceedings pursuant to this Order.  No party currently a party to this litigation
who is aggrieved by the Board's decision on remand need initiate in this court
a new lawsuit appealing the Board's decision on remand, but any such aggrieved
party shall, within twenty (20) days of the filing of the Board's decision with
the City Clerk, (a) file with the court (and serve on all parties) a
proper motion for leave to amend the pleadings to assert a right to judicial
review of the Board's decision on remand, with the form of the proposed amendment
annexed, and (b) file with the City Clerk written notice of having filed
the motion to amend, accompanied by true copies of the moving papers."
The board's
decision after remand was filed with the court on September 22, 2021.  In March of 2022, Palmer filed a motion for
leave to amend the complaint to include the board's postremand decision.  Palmer filed notice with the city clerk of
the motion to amend on March 25, 2022. 
The judge allowed the motion.
      The city argued below and in a cross
appeal that, after remand, the judge lacked jurisdiction to allow Palmer to
serve a motion to amend the complaint with the city clerk after the time period
set forth in the judge's order.  The city
likened the requirement to the jurisdictional filing requirements in G. L.
c. 40A, § 17.  We agree with
the judge that where he retained jurisdiction over the case after remand, and
did not "annul[] the original decision nor call[] for an entirely new,
independent decision," the deadline he imposed on Palmer to serve a motion
to amend the complaint did not arise from the jurisdictional requirements of
G. L. c. 40A.  In light of this
ruling, the judge implicitly denied the city's motion to dismiss.  The judge also found that there was no
prejudice to the defendants.  In these
circumstances, where the judge's remand order was limited, no public hearing
was conducted, the board explained its prior decision, and the judge expressly
directed that the parties were not required to initiate a new lawsuit, the
judge was within his discretion to extend the judicially imposed deadline.  Cf. 311 W. Broadway LLC v. Zoning Bd. of
Appeal of Boston, 90 Mass. App. Ct. 68, 73-74 (2016).
      6. 
Super majority vote.  As described
in the original decision, the city council sought a favorable finding on its
administrative appeal, asserting that "the time to act on the building
permits . . . has expired." 
The original vote of the board was four to one to grant the city
council's petition.  Thus, the board
concluded that the building permits had expired.
      On remand, only four of the original five
members who voted were present at the hearing conducted on September 2,
2021.  Each of the four members explained
on the record his reason for voting:  two
explained that they agreed with the timeline presented by an opponent of the
project; one said his decision "was based on his doubts about the project
and its associated health impacts"; and one said he agreed with Palmer's
timeline showing that the permit had not expired.  The four members then voted to "adopt
the reasons stated on the record" and instructed the associate city
solicitor to file its supplemental statement of reasons with the Land
Court.  Palmer contends that in the vote
on remand, the board did not have the supermajority of four out of five votes.  See G. L. c. 40A, § 15
("The concurring vote of all members of the board of appeals consisting of
three members, and a concurring vote of four members of a board consisting of
five members, shall be necessary to reverse any order or decision of any
administrative official under this chapter").
      We agree that the decision after remand
lacked a supermajority.  However, as the
judge noted in response to the city's argument that the judge lacked
jurisdiction, his remand order neither "annulled the original decision nor
called for an entirely new, independent decision to be issued"; instead,
the remand took place simply "to allow the Board to amplify the reasons
for its initial decision."  The
first decision contained a four to one vote and we do not view it as so lacking
in detail that it was ineffective or unlawful. 
Four members voted that the permits had expired; "it is
inconsequential that they came to that conclusion via various routes."  Security Mills Ltd. Partnership v. Board of
Appeals of Newton, 413 Mass. 562, 567 (1992).
      Conclusion.  For all of the foregoing reasons, the
judgment affirming the board's revocation of the building permits must be
reversed.  We remand the case for entry
of a new judgment instructing the board to reinstate the building permits and
further orders, if necessary, consistent with this opinion.
So ordered.
 
footnotes
 
[1] City council
of Springfield.
 
[2] "The
Great Recession was an economic downturn and financial crisis that began in
late 2007," Hartnett v. Contributory Retirement Appeal Bd., 494 Mass. 612,
613 n.2 (2024), and led to a precipitous fall in the real estate market, see
Caveney v. Caveney, 81 Mass. App. Ct. 102, 107 (2012).
 
[3] The parties
also make certain procedural challenges to the board's decision.  The city argues that Palmer did not file a
timely appeal from the board's modified decision and Palmer contends the board
lacked a supermajority for its modified decision.  We address these issues infra.
 
[4] The parties
agree that the two building permits at issue in this case authorized (1)
"'site grading for storm drainage control in preparation for construction'
of the Facility"; and (2) "install[ation of a] reinforced concrete
foundation for [the Facility's] future 275' tall steel power stack."  The record indicates that in 2013, after the
building permits were issued, the city adopted a change to its zoning ordinance
that would require a special permit for projects of the size proposed.  Thus, it appears that if the building permits
at issue have expired, Palmer would need to obtain a special permit for the
project.  Whether, even if the two
building permits at issue are still viable, Palmer nonetheless needs a special
permit, see Smith v. Board of Appeals of Brookline, 366 Mass. 197, 200-201
(1974) (questioning whether excavation permits were sufficient to merit
protection of G. L. c. 40A), is not before us and we do not address
that issue.
 
[5] The parties
have not provided the version of either the local zoning ordinance or the State
building code in effect when the permits were granted.  We note that pursuant to the 8th edition of
the State building code, building permits generally lapse unless work is commenced
within 180 days of issuance.  See 780
Code. Mass. Regs. § 105.5 (2009).
 
[6] On January 7,
2019, members on the city council asked that the building commissioner revoke
the building permits on the grounds that Palmer lacked a special permit
required under a 2013 amendment to the city's zoning ordinance.  The building commissioner denied the request
on January 17, 2019, reasoning that "the 2013 zoning amendment did not
apply because [Palmer] had received Building Permits that were still valid by
operation of the tolling afforded by appeals of the Building Permits, by the
Permit Extension Act, and by G. L. c. 40A, § 6."  There was no appeal from the building
commissioner's decision.
 
[7] Palmer's
report provided "an update on construction progress with supporting
documentation."
 
[8] The appeal
included a brief remand to allow the board to more fully explain its reasoning
in revoking the permits, which we will discuss in more detail below.
 
[9] That the
permit extension act was enacted on an emergency basis informed developers and
municipalities promptly that certain permits that otherwise might have expired
were still valid.  Yet, the four-year
length of the extension belies the idea that the Legislature expected
"shovels in the dirt" immediately.
 
[10] On April 3,
2020, the Legislature enacted St. 2020, c. 53,
§ 17 (b) (iii), which tolled the expiration of "a permit in
effect or existence as of March 10, 2020, including any deadlines or conditions
of the permit, . . . during the state of emergency."  See generally Lynn v. Murrell, 489 Mass. 579,
579-580 (2022) (state of emergency ended on June 15, 2021).  Aside from its argument that the building permits
had expired prior to March 10, 2020, the city makes no argument the statute for
other reasons does not apply to the building permits at issue.
 
[11] We do not
read St. 2010, c. 240, § 173 (b) (3), of the permit
extension act, which preserves a municipality's right to modify or revoke a
permit if so authorized by "the law or regulation under which the permit
. . . was issued," as inconsistent with our decision.