JOHN B. GRIFFITH & another,[1] trustees, vs. BOARD OF APPEALS
OF FRAMINGHAM
(and a companion case).[2]

Nos. 88-P-282 & 88-P-329.

Middlesex. February 13, 1989. — April 25, 1989.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Zoning*, Board of appeals: decision, jurisdiction; Amendment of by-law or
ordinance; Site plan approval. *Framingham*.

A provision in a town's zoning by-law, barring the board of appeals from
acting favorably on any matter which has received the board's unfavor-
able action at any time within the preceding two years, had no application
to an appeal by landowners from a decision by the town's building
inspector denying their request for revocation of a building permit for
construction on land abutting their property, where the board's prior
action, dismissing the abutters' appeal from the planning board's ap-
proval of a parking plan for the structure, had been based on untimeliness
of the appeal. [229-231]

A town's board of appeals correctly ruled that a building permit for construc-
tion of a two-level parking garage was invalid on the ground that the
permit holder had not complied with respective amendments to the zoning
by-law requiring, at the time of issuance of the permit, a traffic impact
review and, at the time of the permit's extension, site plan approval by
the planning board. [231]

A proposed two-level parking garage was a "structure" for purposes of a
provision of the Framingham zoning by-law requiring site plan approval
by the town's planning board. [231-233]

CIVIL ACTIONS commenced in the Superior Court Department
on February 27, 1986, and April 30, 1986, respectively.

The cases were heard by *Hiller B. Zobel*, J., on motions
for summary judgment.

---

[1] Mark M. Kisiel. Kisiel and Griffith are trustees of Commonwealth
Center Trust.

[2] Framingham Trust Company *v.* Board of Appeals of Framingham &
others.

*Treazure R. Johnson* for John B. Griffith & another.

*Michael C. Donahue* for Framingham Trust Co. & others (*Aaron K. Bikofsky*, Town Counsel, with him).

DREBEN, J. Pursuant to a plan approved by the planning board of Framingham and a building permit issued by the building inspector of the town, the Framingham Trust Company (bank) constructed a two-level parking garage [3] on land abutting property of Commonwealth Center Trust. In two proceedings before the board of appeals, the trustees challenged the legality of permitting the construction of the parking facility on the basis of 1985 amendments to the zoning by-law.[4] The first proceeding before the board of appeals was an appeal from an August, 1985 approval of the parking plan by the planning board.[5] In February, 1986, after a hearing, the board of appeals dismissed the trustees' appeal as untimely, although it also stated that the building permit was valid. The second proceeding was an appeal by the trustees from the refusal by the building inspector of their request to revoke the building permit which had been issued in January, 1985 and extended in July of that year.[6] In April, 1986, the board of appeals ruled the permit invalid on the ground that there had not been compliance with the 1985 amendment to the zoning by-law which required site plan approval by the planning board.

An appeal to the Superior Court under G. L. c. 40A, § 17, was taken by the trustees from the February, 1986 decision of the board of appeals and by the bank from the April, 1986 decision. The cases were consolidated in the Superior Court

---

[3] Sometimes referred to in the record as a deck and sometimes as a garage.

[4] In January, 1985 a by-law amendment provided for a traffic impact review by the planning board; this provision was superseded by a June, 1985 amendment providing for a site plan review by the planning board.

[5] The Framingham zoning by-law has provisions for parking plan approval by the planning board, and, as of June, 1985, see note 4, *supra*, for site plan approval by that board. Both the parking plan and site plan provisions allow persons aggrieved by a decision of the planning board to appeal to the board of appeals.

[6] Construction had not yet commenced at the time the extension was issued.

with a third action, previously brought by the trustees, seeking injunctive relief.[7]

On cross-motions for summary judgment, a judge of the Superior Court held that because there was not a specific and material change in circumstances between the February and April decisions of the board of appeals, the board lacked power to review the matter again in April. He considered such action barred by a two-year moratorium imposed by a Framingham by-law on appeals which have been unfavorably acted upon. See note 8, *infra*. The judge also ruled that the February decision of the board of appeals was correct: the trustees, not having filed a timely appeal, lacked standing to appeal the issuance of the permit and, even if the appeal were timely, the 1985 amendments did not apply at the time the permit was issued. We reverse.

1. Section V.D.7 of the Framingham zoning law, set forth in the margin,[8] a provision similar to G. L. c. 40A, § 16, has as its purpose "to give finality to administrative proceedings and to spare affected property owners from having to go repeatedly to the barricades on the same issue." See *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. 112, 115 (1981). Like the analogous policies underlying the doctrines of issue and claim preclusion, that policy does not apply where the prior action has been dismissed for lack of jurisdiction or

---

[7] That complaint was dismissed against the bank because of the failure of the trustees to seek administrative remedies. A motion to dismiss by the planning board was also allowed. Since there was no appeal from either dismissal, it was error to consolidate the case with the other two and to enter judgment on the merits. Accordingly, the appeal from the erroneously entered judgment in the third action (88-P-281) is dismissed.

[8] "7. No appeal, application or petition which has been unfavorably acted upon by the Board of Appeals or the Board of Selectmen shall be acted favorably upon within two years after the date of final unfavorable action unless said Board of Appeals or Board of Selectmen finds, by a unanimous vote, specific and material changes in the conditions upon which the previous unfavorable action was based, and describes such changes in the record of its proceedings, and unless all but one of the members of the Planning Board consents thereto and after notice is given to parties in interest, as required by G. L. Chapter 40A Section 11, of the time and place of the proceedings when the question of such consent will be considered."

for failure of the plaintiff to satisfy a precondition to suit. See *Wright* v. *Zoning Bd. of Appeals of New Fairfield*, 174 Conn. 488, 492 (1978) (lack of jurisdiction due to improper notice); 4 Rathkopf, Law of Zoning and Planning § 48.02, at 48-4, n.1 (4th ed. 1988); Restatement (Second) of Judgments § 20 (1)(a) & (2) (1980), and see also § 83, which applies similar rules to administrative tribunals. Moreover, the Supreme Judicial Court has held that where the relief requested is different, the similar moratorium provision of former G. L. c. 40A, § 20 (now G. L. 40A, § 16), does not apply. *Halko* v. *Board of Appeals of Billerica*, 349 Mass. 465, 472-473 (1965).[9] This court has indicated that a second application is warranted where the board regards itself as having acted on erroneous information.[10] See *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. at 117.

We think the principles of these authorities apply here, where the first decision of the board of appeals was a dismissal of an untimely attempt by the trustees to appeal the August, 1985 decision of the planning board.[11] That the zoning board dismissed the appeal "with prejudice" is of no effect where the dismissal is so plainly based on the untimeliness of the appeal. See Restatement (Second) of Judgments § 20 comment d.

---

[9] In *Halko*, after an unsuccessful attempt to obtain a special permit, the plaintiff brought a second proceeding seeking a variance. It was held not to be precluded by the first proceeding.

[10] In the present cases, it does not appear that the board of appeals was made aware, prior to its February, 1986 decision, that the by-law amendment preceded the issuance of the building permit.

[11] The date of the appeal is disputed; at the earliest, however, it occurred in October, and hence not within thirty days of the August decision as required by G. L. c. 40A, § 15.

The parties stipulated that the trustees received "no formal notification" of the planning board's decision. Whether the trustees had actual or constructive notice of the decision does not appear, and on the record before us it is by no means clear that they had an opportunity to file a timely appeal to the board of appeals. For this reason, we do not consider the question whether, if the trustees had a meaningful right to appeal the decision of the planning board under the zoning by-law and did not pursue that right in a timely fashion, they could later challenge the planning board's decision by seeking enforcement by the building inspector under G. L. c. 40A, § 7, and appealing from a refusal to enforce.

Accordingly, we hold that the board of appeals had power to act on the second appeal of the trustees.

2. The second appeal to the board of appeals was brought by the trustees following the denial by the building inspector of their request of December 16, 1985, to revoke the building permit because of the failure of the planning board to comply with the by-law amendments. See note 4, *supra*. On uncontroverted evidence, the board of appeals found that the building permit had been sought and issued on January 17, 1985, a date subsequent to the effective date of the zoning by-law amendment requiring a traffic impact review; that the parking facility required such a review; that such review by the planning board had not taken place, and that, as a result, the permit was illegal. The board of appeals ruled that since the January permit was illegal, there was no permit lawfully to extend and thus the extension of the permit issued in July, 1985 was also illegal. The bank's facility, in the view of the board of appeals, was subject to the June, 1985 by-law amendment requiring a site plan review.

Since the January by-law amendment preceded the issuance of the building permit, the decision of the board of appeals that the requirements of the January by-law amendment should have been considered prior to the issuance of the permit and that the June by-law amendment should have been considered prior to the permit's extension was correct. See G. L. c. 40A, § 6; *Alexander* v. *Building Inspector of Provincetown*, 350 Mass. 370, 375-376 (1966).

The bank [12] also argues that the site plan provisions inserted by the 1985 by-law amendment are not applicable because they apply only to "structures," and the bank's parking facility is not a "structure" within the definition of that term in the zoning by-law. Although the definition, set forth in the margin,[13]

---

[12] The bank and town counsel filed a joint brief. That brief does not explain why the board of appeals, through town counsel in this proceeding, is taking a position contrary to the one taken in its latest decision.

[13] "Structure: Any combination of materials assembled at a fixed location providing support or shelter, such as a building, framework, tent,

excludes "parking areas," the by-law does not exclude parking structures. To the contrary, Section IV.B.6 (roman numerals denote "sections" in the Framingham zoning by-law), set forth in relevant part in the margin,[14] specifically mentions parking "structures" and subjects such facilities to "this Section." The site plan provisions are part of Section IV. From what appears in the record, the bank's parking facility[15] does not fall within the exclusion urged by the bank.[16]

Moreover, an examination of the site plan provisions, Section IV.I, shows that the concerns there expressed are much broader than those in the off-street parking provisions of Section IV.B. The site plan provisions call for review of uses and structures "which may have significant impacts on traffic, municipal and public services and utilities, environmental quality, community economics, and community values in the

---

shed, or mast for radio antennas, but *excluding* sidewalks and paved areas on streets, driveways, *parking areas*, and patios." (Emphasis supplied.)

[14] "IV.B.6 Applicability for Parking Structures and Small Facilities

Parking facilities provided in an enclosed structure *shall be subject to the provisions of this Section*, except for Sections IV.B.2 (c) and IV.B.4 [provisions dealing with setbacks from a building line and landscaping]. Unenclosed parking facilities beneath a structure shall be subject to the provisions of this Section, except for Sections IV.B.2 (c) [setback from building line], and such parking level shall be deemed to be a story when its ceiling is four feet six inches or more above finished grade . . . ." (Emphasis supplied.)

[15] The July 23, 1985, minutes of the planning board refer to the proposed construction as a "two-level garage." See also note 3, *supra.*

[16] In arguing that the site plan provisions which only apply to structures having a certain floor area do not include the bank's garage, the bank cites another exclusion. A note to Section IV.B.1(a) excludes from gross floor area the area designed for off-street parking. The note, however, is appended to a provision which established the number of parking spaces required for each new or extended facility, such as a bank or an office building. The number is to be determined in many instances by the gross floor area of the new facility. The note prevents circular calculations and provides, therefore, that in computing what parking is required, e.g., per 250 square feet of office space, the calculation does not include in the 250 square feet the square feet required for parking. The location of the note and its meaning indicate that the exclusion applies only to the calculations under Section IV.B.1(a)

Town." The planning board is also given more extensive authority in its site plan review. It can require "off-site improvements to improve the capacity and safety of roads, intersections, pedestrian ways, . . . and other public facilities which are likely to be affected by the proposed development." Section IV.I.8(c). The parking plan provisions do not provide for off-site improvements.

A garage, perhaps more than any other structure, will have a significant impact on traffic on adjoining streets and intersections. Accordingly, we see no indication in the by-law that the bank's facility is not subject to site plan review. That there may be some overlap with the off-street parking provisions of the by-law is not determinative.

The judgments in cases numbered 88-P-282 and 88-P-329 are vacated and they are remanded to the Superior Court for the entry of judgments affirming the April, 1986 decision of the board of appeals and for such other proceedings not inconsistent with this opinion as may, if there is a further hearing, appear appropriate. See *Smith* v. *Building Commr. of Brookline*, 367 Mass. 765, 772 (1975); *Wheatley* v. *Planning Bd. of Hingham*, 10 Mass. App. Ct. 884, 885 (1980). The appeal in 88-P-281 is dismissed. See note 7, *supra*.

*So ordered.*