JULIE ANN McDERMOTT *vs.* BOARD OF APPEALS OF MELROSE.

No. 02-P-188.

Middlesex. May 19, 2003. - September 30, 2003.

Present: PORADA, LAURENCE, & KANTROWITZ, JJ.

*Zoning,* Special permit, Board of appeals: decision, Lapse of permit.

This court concluded that a special permit issued by a city's board of appeals (board) to the plaintiff landowner was not void because it had lapsed, where the plaintiff had used her property as allowed under the special permit for approximately nine years before recording the decision of the board granting the special permit, and therefore fell within the substantial use exception to the two-year lapse provision set forth in G. L. c. 40A, § 9. [460-462]

CIVIL ACTION commenced in the Superior Court Department on October 16, 2000.

The case was heard by *Linda E. Giles,* J., on motions for summary judgment.

*Christopher R. Vaccaro* for the plaintiff.

*Robert F. Lucas* for the defendant.

KANTROWITZ, J. We consider the consequences to a landowner who was issued a special permit by the board of appeals (board) of the city of Melrose (city) in December of 1990, used the premises as the special permit allowed for approximately nine years, but did not record the board's decision granting the permit with the Middlesex South registry of deeds until 2000.

Under G. L. c. 40A, § 9, a special permit that has been granted but not substantially used within two years following the grant is void. In revoking the permit in 2000 for nonuse, the board reasoned (and the Superior Court judge agreed) that any use the plaintiff may have made of it between 1990 and 2000 was of no legal effect because § 11 of c. 40A, along with a parallel provision within the city's zoning ordinance, required

the decision granting the permit to be recorded before the permit could be considered (in § 11's words) to have "take[n] effect." Thus, the board and the judge both concluded that the permit had not been used within the meaning of § 9 because it had not taken effect (until 2000 when it was recorded) within the meaning of § 11. *Cohasset Heights, Ltd.* v. *Zoning Bd. of Appeals of Cohasset*, 53 Mass. App. Ct. 116 (2001), counsels otherwise.

Here, the plaintiff's use of her property under the special permit for the years between its grant and its recording places the case within the substantial use exception to the two-year lapse provision set forth in § 9. Thus, we reverse summary judgment for the board and conclude that the special permit did not lapse because it was substantially used within two years of its grant even if it was not recorded at that time.

*Background.* On December 5, 1990, the plaintiff was issued a special permit by the board, allowing her to use a portion of her property at 35 Dexter Road, Melrose, as a personal lodging unit. The plaintiff has owned the property since 1989, prior to which it was used as a single-family residence. She rented the premises out and sought a permit to use a portion of the basement area as a lodging unit for herself.[1]

The board's decision granting the permit and a cover letter were sent to the plaintiff's attorney on December 13, 1990. The decision, a two-page document, granted her a special permit to use her basement as a lodging unit as long as certain restrictions were met.[2] No language appeared in the decision indicating to the plaintiff that the special permit needed to be recorded.

---

[1]The dwelling that is the subject of the special permit is located in a SR-A zoning district, which, pursuant to art. V, section 5.4 of the city zoning ordinance, allows for one lodging unit housing up to three persons in an existing dwelling by grant of a special permit.

[2]The decision stated, in pertinent part:

> "[T]he relief sought is GRANTED, provided that the following restrictions are complied with. The continuation of this Special Permit establishing a 'lodging unit' in the premises is wholly dependent upon the sole ownership of the said premises by Julie McDermott, the petitioner herein, and upon her exclusive use of the 'lodging unit'. Further, no cooking facilities whatsoever shall be allowed in the 'lodging unit'. In the event that these restrictions are violated, this grant of a special permit shall be automatically void."

The letter accompanying the decision informed the plaintiff that the special permit had been granted and reiterated its terms and restrictions. The letter also informed the plaintiff of the following: the decision "must be recorded . . . before a building permit may be issued" and the "special permit shall lapse if construction has not begun within 2 years."[3]

On January 7, 1991, the assistant city clerk sent another letter to the plaintiff's attorney certifying that the decision had been filed by the board with the city clerk on December 13, 1990, that twenty days had passed since then, and that no appeal had been taken. Therefore, the decision was "still in force and effect."

Because the plaintiff did not need to perform any construction on the property incident to the lodging unit use, she neither recorded the decision nor obtained a building permit. After approximately nine years, an abutter advised the city building commissioner that the plaintiff's special permit had not been recorded. On March 28, 2000, the commissioner notified the plaintiff via letter that she was in violation of art. 11, section 11.2.7 of the city zoning ordinance.[4] The letter informed her that

---

[3]The relevant portion of the cover letter read:

"A copy of this decision bearing the certification of the City Clerk that 20 days have elapsed after the decision has been filed in the office of the City Clerk and no appeal has been filed, or that if such appeal has been filed, that it has been dismissed or denied, must be recorded with Middlesex South District Registry of Deeds, and proof of such recording must be presented to the Building Dept. before a building permit may be issued. This decision does not relieve you of the obligation to obtain a building permit if needed. If the rights authorized by a variance are not exercised within 1 year of the date of grant of such variance, they shall lapse. A special Permit shall lapse if construction has not begun within 2 years."

[4]Section 11.2.7 states, in relevant part: "*No* variance or *special permit . . . shall take effect until a copy of the decision* bearing the certification of the City Clerk that twenty (20) days have elapsed and no appeal has been filed or that if such appeal has been filed, that it has been dismissed or denied, *is recorded* in the Registry of Deeds with the date and time of such recording and indexed in the grantor index under the name of the owner of record or is recorded and noted on the owner's certificate of title" (emphases supplied). This section essentially tracks the language of G. L. c. 40A, § 11, requiring special permits to be recorded.

she was required to "record the decision and bring proof of recording to the Building Department within two years of the date [December 5, 1990] of the written decision. The failure to record the instrument has rendered the special permit void and now you must cease and desist the use of a 'lodging unit' . . . ." Shortly after receiving this letter, the plaintiff recorded the special permit.

On May 18, 2000, the plaintiff appealed the commissioner's decision and order to the board, arguing that the zoning ordinance does not contain any special provision regarding the lapse of special permits within a specified time or set out any specific time within which a special permit must be recorded. The board affirmed the commissioner's decision that the special permit was void.

The plaintiff then filed a complaint in the Superior Court pursuant to G. L. c. 40A, § 17. Cross motions for summary judgment were filed. The Superior Court allowed the board's motion for summary judgment, upholding the decisions of the commissioner and the board.

*Discussion.* Once the special permit was issued and the plaintiff began using the property in accordance with the permit's specifications, a substantial use of the permit commenced.[5] As such, the plaintiff's use of the permit falls within the substantial use exception to the two-year lapse provision of G. L. c. 40A, § 9,[6] and is not void for any failure to timely record it.

We recognize that G. L. c. 40A, § 11, requires that a special

The following section was added to the ordinance on February 19, 2002: "A special Permit granted under this Ordinance shall lapse in two years . . . if a substantial use thereof has not sooner commenced except for good cause . . . ."

[5] We note that there is little if any evidence on the record regarding the use of the lodging unit or lack thereof. The plaintiff claims in her brief to have used her property as a lodging unit but has cited no summary judgment materials in support of this. The board has cited nothing refuting that claim. It appears that the question whether the plaintiff had actually used the property as a lodging unit was never an issue between the parties.

[6] The statute states in pertinent part that a special permit lapses "within a specified period of time [set forth in the local zoning ordinance], not more than two years . . . from the grant thereof, *if a substantial use thereof has not*

permit be recorded in order to "take effect."[7] In some circumstances, however, the failure to record is not necessarily fatal. For example, in *Cohasset Heights, Ltd.* v. *Zoning Bd. of Appeals of Cohasset,* 53 Mass. App. Ct. at 117, a special permit was granted in 1976 to operate a landfill. It was not recorded at that time. In 1986, a zoning bylaw was passed by the town prohibiting the use of the land as a landfill. Years of litigation followed. In 1998, the lack of recording came to light and a complaint was lodged on that ground. At that point, the plaintiff finally recorded the permit. "Citing G. L. c. 40A, § 11, the [trial] judge ruled that although the permit had been issued in 1976, [the plaintiff's] failure to record the permit was 'fatal to [G. L. c. 40A,] § 6[,] protection' [as a prior legal nonconforming use]. . . . He stated that '[i]t would be anomalous if § 6 protection could be based on a special permit which had not gone into effect.' " *Id.* at 118 (footnote omitted).

Our court held otherwise, holding that "[u]nder § 6, issuance alone qualifies a special permit as a prior nonconforming use. . . . [Section 6] clearly establishes that issuance of a special permit marks the beginning of protection as a prior nonconforming use from subsequent zoning changes." *Id.* at 118-119.

While *Cohasset Heights* dealt with protection under § 6, it is nonetheless instructive to the matter at hand, which deals with whether a "substantial use" occurred within the meaning of § 9. As in both *Cohasset Heights* and the present case, years elapsed between the securing and the recording of the special permit. By recognizing the special permit as "effective" within the meaning of § 11 upon its recording many years after its issuance, *Cohasset Heights* implicitly rejected the proposition that a special permit lapses, despite use, if it is not recorded within two years. *Id.* at 118 n.6. Under § 9, it is use that must com-

sooner commenced except for good cause . . ." (emphasis supplied). G. L. c. 40A, § 9.

[7]General Laws c. 40A, § 11, provides that: "No variance or special permit . . . shall take effect until a copy of the decision bearing the certification of the city or town clerk . . . is recorded in the registry of deeds for the county and district in which the land is located and indexed in the grantor index under the name of record or is recorded and noted on the owner's certificate of title."

mence within two years to prevent lapse, rather than recording. Here, the plaintiff substantially used the premises in conformance with the special permit and thereby satisfied the requirements of § 9. Cf. *Bernstein* v. *Chief Bldg. Inspector & Bldg. Commr. of Falmouth*, 52 Mass. App. Ct. 422, 427 (2001).

Summary judgment is reversed. Judgment is to enter in the Superior Court annulling the board's decision as in excess of its authority.

*So ordered.*