PAUL CORNELL *vs.* BOARD OF APPEALS OF DRACUT
& another.[1]

No. 07-P-1280.

Suffolk. May 13, 2008. - August 19, 2008.

Present: KANTROWITZ, KAFKER, & VUONO, JJ.

Further appellate review granted, 452 Mass. 1105 (2008).

*Zoning,* Variance.

A Land Court judge properly determined that the plaintiff's variance, which allowed him to subdivide his parcel into two lots, creating one conforming lot and one nonconforming lot with inadequate frontage, had lapsed because he failed to exercise it within the one year mandated by G. L. c. 40A, § 10, in that the necessary steps the plaintiff took toward obtaining a building permit and subdividing his land all could have been done without the variance, and did not substantially change his position in reliance on the variance. [392-394]

CIVIL ACTION commenced in the Land Court Department on December 15, 2003.

The case was heard by *Alexander H. Sands,* J., on motions for summary judgment, and a motion to alter or amend the judgment was heard by him.

*Justin Perrotta* for the plaintiff.

*James P. Hall* for Board of Appeals of Dracut.

KANTROWITZ, J. In this case, we consider what constitutes an exercise of a variance pursuant to G. L. c. 40A, § 10. Under the facts and circumstances presented, we conclude that no such exercise has occurred and thus affirm the judgment entered in the Land Court.

*Background.* On March 7, 2002, the defendant board of appeals of Dracut (town) granted the plaintiff, Paul Cornell, a variance to subdivide his fourteen-acre parcel into two lots. More than one year later, in June, 2003, Cornell applied for a building permit, which was denied by the town building inspector on the ground that the variance had expired.

---

[1]Building inspector of Dracut.

Cornell brought suit in the Land Court, asserting that the variance had not lapsed. On cross motions for summary judgment, the judge allowed the defendants' motion, denied Cornell's motion, and judgment entered for the defendants. Cornell then filed a motion to alter or amend the judgment, which was denied. Cornell appeals.

*Facts.* Cornell owns fourteen acres of undeveloped property that, by current standards specified by the town zoning by-laws, lack sufficient frontage for more than one lot.[2] Hoping to subdivide his property into two lots of nine and five acres respectively, Cornell applied for a variance, which was granted by the board of appeals in March of 2002.

Upon obtaining the variance, Cornell began to seek the necessary approvals from other town boards to subdivide and develop his property. First, he hired a land surveyor to finalize his two-parcel plan for presentation to the town planning board for an "approval not required" (ANR) endorsement. Cornell's ANR request was approved by the planning board on August 14, 2002, and Cornell recorded his plan on August 30, 2002. Next, Cornell hired Norse Environmental Services, Inc., to prepare a subsurface septic plan and wetlands delineation plan for the property. Soil testing began in November, 2002, and Cornell subsequently applied for approval of the septic design from the town board of health on February 14, 2003. As a result of a number of continued meetings, however, the board of health did not grant the necessary approval until June 12, 2003. Cornell also sought an order of conditions from the town conservation commission in early 2003, which eventually issued on May 7, 2003.[3] In taking these steps, Cornell spent in excess of $15,000.

In June, 2003, Cornell applied for a building permit. The building inspector denied the permit on the ground that the 2002 variance had expired because it had not been exercised within one year. By letter dated June 16, 2003, Cornell filed for

---

[2] Apparently, 175 feet of frontage is required for each lot. If Cornell's subdivision plans are executed, the smaller of the two lots would only have 150 feet of frontage.

[3] The plaintiff needed approvals from the planning board, board of health, and conservation commission before he could obtain a building permit.

an extension of the 2002 variance, which was denied because it was not timely. Cornell then applied for a new variance under the same conditions as the 2002 variance. That request was denied by the board of appeals on November 13, 2003, and the decision was filed with the town clerk on November 25, 2003.

Cornell filed the instant complaint in the Land Court on December 15, 2003, alleging that the variance had not lapsed, because his conduct — seeking approval from the planning board, board of health, and conservation commission — was sufficient to "exercise" the variance within the one year mandated by G. L. c. 40A, § 10. On May 16, 2006, the Land Court judge granted summary judgment in favor of the defendants. Central to the judge's decision was the fact that Cornell did not record his variance, as required by G. L. c. 40A, § 11,[4] until January 16, 2004. The judge reasoned that since the variance could not "take effect" until it was recorded in January, 2004, there was no logical way it could have been "exercised" within one year of its grant on March 7, 2002. Although the judge found this point dispositive, he further ruled that Cornell's actions in 2002 and 2003 were not sufficient to "exercise" the variance irrespective of the recording issue.

*Discussion.* Although a zoning board may in its discretion grant a variance, it is not required to do so, because no one has a legal right to a variance. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557, 559 (1954). Variances are, by nature, individual waivers of local legislation that permit nonconformity. *Mendoza* v. *Licensing Bd. of Fall River*, 444 Mass. 188, 207 (2005). Thus, variances are not allowed as a matter of right and should be "sparingly granted." *Lussier* v. *Zoning Bd. of Appeals of Peabody*, 447 Mass. 531, 534 (2006), quoting from *Barron Chevrolet, Inc.* v. *Danvers*, 419 Mass. 404, 408 (1995). Additionally, "the language of a variance 'is to be construed against the individual requesting the variance, rather than against the granting authority.' " *Ibid.*, quoting from *DiGiovanni* v. *Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 347 (1985).

---

[4]General Laws c. 40A, § 11, as amended by St. 1987, c. 498, § 2, provides, in pertinent part that, "[n]o variance . . . shall take effect until [it] . . . is recorded in the registry of deeds . . . ."

General Laws c. 40A, § 10, provides that "[i]f the rights authorized by a variance are not exercised within one year of the date of grant of such variance such rights shall lapse." Although there are few cases interpreting what constitutes "exercise" within the meaning of § 10, *Hogan* v. *Hayes*, 19 Mass. App. Ct. 399, 404 (1985), makes clear that whether a variance has been "exercised" is determined by the acts taken by the holder in reliance on the variance. While the variance need not be "fully carried out by actually building," *ibid.*, the exercise of the variance is sufficient to prevent its lapse, as the Land Court judge observed in a prior case and with which we agree, so long as the variance holder "substantially changes his or her position in reliance upon the variance." Alroy *vs.* World Realty & Dev. Co., 5 LCR 245, 248 (Land Ct. No. 230584 Dec. 22, 1997).[5]

When evaluating whether there has been an "exercise," the purpose of the variance itself is significant. In *Hogan* v. *Hayes*, the owner of a parcel of property applied for and obtained a variance allowing for the division of her property into two undersized lots with inadequate frontage. 19 Mass. App. Ct. at 400-401. This court determined there had been sufficient exercise when the owner disposed of one of the lots in reliance on the variance, and retained the other lot that could not have been developed without the variance. *Id.* at 404 (the owner "retained a lot which, except for the variance, could not have been developed and would have lost value. Even though the variance had not been fully carried out by actually building, we think it was sufficiently [and irrevocably] exercised"). Thus, there was an exercise in *Hogan* because the owner took an action which, but for the variance, would have been prohibited.[6]

In this case, the variance allowed Cornell to subdivide his

---

[5]The Land Court cases cited in this opinion are used as guidance, not precedent. See generally *Chace* v. *Curran*, 71 Mass. App. Ct. 258, 261 n.4 (2008).

[6]In Laberis *vs.* Gandlofo, 2 LCR 99 (Land Ct. No. 205878 July 11, 1994), the plaintiff obtained a variance to divide her property into two parcels. The variance "required a land exchange with an abutter in order to meet the standards set forth in the variance." Although the plaintiff failed to obtain a building permit within the allotted time, she obtained and recorded two partial releases of mortgages and two deeds effectuating the land exchange. The Land Court held that the variance had been exercised because the owner effectuated the land exchange contemplated and required by the variance.

parcel into two lots, creating one conforming lot and one non-conforming lot with inadequate frontage. While Cornell thereafter took necessary steps toward obtaining a building permit and subdividing his land, none of his actions substantially changed his position in reliance upon the variance. Although Cornell had his ANR plan approved and recorded, and he applied to the board of health and the conservation commission within the one year of the date of the variance, these steps, taken in preparation for subdividing the land, were not sufficient to constitute exercise in reliance upon the variance. Nothing prohibited Cornell from seeking these approvals simultaneously with, or even prior to, seeking the variance. Further, once he realized he would be unable to obtain the necessary permits within the year, he was free to apply for a six-month extension pursuant to G. L. c. 40A, § 10.[7]

*Conclusion.* To exercise a variance, an applicant must take steps necessary to achieve the purpose for which it was granted or must substantially change his position in reliance thereon. Here the steps taken, all of which could have been done without the variance, were insufficient. We also note that Cornell neither recorded the variance[8] nor sought to extend it.

*Judgment affirmed.*

*Order denying motion to alter or amend judgment affirmed.*

---

[7]General Laws c. 40A, § 10, provides that a variance holder may apply to the permit granting authority to "extend the time for exercise of such rights for a period not to exceed six months" provided that such application "is filed with such permit granting authority prior to the expiration of such one year period." Cornell did, in fact, apply for an extension on June 16, 2003. The extension was denied, however, because he failed to apply for it prior to the expiration of the one year period.

[8]Cornell also attacks the judge's conclusion that failure to record a variance within one year of its grant necessarily results in a lapse for lack of exercise. The Land Court judge reasoned that since a variance cannot take effect until it is recorded, Cornell's failure to record the variance within one year necessarily meant that the variance had not been exercised. In support of his argument to the contrary, Cornell cites *McDermott* v. *Board of Appeals of Melrose*, 59 Mass. App. Ct. 457, 460-461 (2003), in which this court held that a special permit did not necessarily lapse, even though it was not recorded within two

years of the time it was granted. Cornell invites us to extend our ruling in *Mc-Dermott* to include variances as well as special permits. *McDermott*, however, is distinguishable. In *McDermott*, there was no question that the plaintiff had substantially used her special permit within two years, as was required by G. L. c. 40A, § 9, to prevent a lapse. *Id.* at 462. Had Cornell exercised his variance, only to be informed that it had lapsed from failure to record, his case would present a situation more comparable to that addressed in *McDermott*.