ROSEMARY A. MACERO & others,[1] trustees,[2] vs. PAUL
MACDONALD, trustee,[3] & others.[4]

No. 07-P-227.

Barnstable. April 18, 2008. - December 18, 2008.

Present: PERRETTA, MILLS, & RUBIN, JJ.

*Municipal Corporations,* Board of health. *Sewage Disposal. Administrative
Law,* Decision, Judicial review.

In a landowner's appeal from a decision of a local board of health (board)
    granting variances from State and local sewage disposal regulations in con-
    nection with a neighboring landowner's proposed construction of a new,
    enlarged septic system on an oceanfront lot, the judge erred in granting
    judgment on the pleadings in favor of the board, where the board's deci-
    sion, which was inadequate in several respects, did not permit competent
    judicial review; this court therefore remanded the case to the board for
    further proceedings or, at the very least, further explanation of its decision.
    [366-368]

CIVIL ACTION commenced in the Superior Court Department on
October 7, 2004.

The case was heard by *Robert C. Rufo,* J., on motions for
judgment on the pleadings.

*Rosemary A. Macero,* pro se.

*Richard A. Nylen, Jr.,* for Paul MacDonald & another.

MILLS, J. In this appeal Rosemary A. Macero, Paul D. Mac-
ero, and Patrice L. Ambrosia, as trustees of the SPD Investment
Trust (collectively, SPD), contend that a Superior Court judge,
in SPD's certiorari appeal pursuant to G. L. c. 249, § 4, errone-
ously upheld a decision of the board of health (board) of the
town of Falmouth, which granted variances to Paul MacDonald,

[1]Paul D. Macero and Patrice L. Ambrosia.

[2]Of the SPD Investment Trust.

[3]Of the Cardan Realty Trust.

[4]Thomas Soviero and the board of health of Falmouth.

as trustee of the Cardan Realty Trust, and Thomas Soviero (collectively, Soviero) from the State and local sewage disposal regulations. Soviero proposed the construction of a new, enlarged septic system to serve an enlarged home on its oceanfront lot, which is adjacent to the dwelling and lot owned by SPD. The specific variances requested were from 310 Code Mass. Regs. § 15.213(2) (1995) of the State environmental code (Title 5) and § 15.2(1)(1.0) of the Falmouth health regulations (FHR), both of which prohibit the construction of a septic system in a coastal dune, a protected resource area.

In a decision dated September 8, 2004, the board[5] granted the variances, and SPD appealed to Superior Court. On motions for judgment on the pleadings,[6] and after hearing,[7] a judge affirmed the board's decision.

1. *Facts.* The Soviero lot contains an existing single-family, two-story house; a deck; a patio; a driveway; a garage; and a septic system. In July, 2004, Soviero applied for the variances to permit the new, enlarged septic system in order to reconstruct the home on the property.[8] The SPD lot directly abuts the Soviero lot, both of which are in an environmentally sensitive area adjacent to Buzzard's Bay. The Soviero property is dominated by various wetland resource areas, including coastal dunes, land subject to coastal storm flowage, and the velocity zone of coastal storm waves, all of which are protected resources and subject to

---

[5]The board is the municipal body charged with implementing and enforcing Title 5 as well as the FHR.

[6]See Superior Court Standing Order 1-96.

[7]The board did not file a pleading in the Superior Court.

[8]The record is unclear as to what exactly Soviero proposed to do with the property: completely demolish the existing building and construct a new one, or remodel only. However, it is apparent from the record that the existing, functioning septic system, suitable for four bedrooms, was to be totally abandoned and removed, and a new system with a 2,500-gallon capacity was to be installed in a completely different location on the lot. The new system would be functionally capable of servicing more than four bedrooms.

According to Title 5, the existing septic system was required to have been inspected and certified as Title 5 compliant at the time of Soviero's purchase of the house in 2002. See 310 Code Mass. Regs. § 15.301(1) (1995). Title 5 also contains specific provisions to determine whether a septic system fails to comply with Title 5. See 310 Code Mass. Regs. § 15.303 (1995). There is no credible evidence in the record that the existing septic system ever had failed or that the new system was required by the board or by any State or local regulation.

the Massachusetts Wetlands Protection Act (G. L. c. 131, § 40), and the Falmouth wetlands by-laws. The new septic system would be located within a coastal dune.

2. *The regulations.* a. *FHR protection of coastal dune.* Section 15.2(1)(1.0) of the FHR provides that no septic system leaching facility[9] shall be located in a coastal dune. Section 15.1(3) of the FHR states that the board may vary "the application of any provisions of this Regulation with respect to any particular case when, in its opinion, (1) the enforcement thereof would do manifest injustice; and (2) the applicant has proved that the same degree of health and environmental protection required under this title can be achieved without strict application of the particular provision."[10]

b. *Title 5 protection of coastal dune.* Title 5 prohibits the installation of a soil absorption system[11] in a coastal dune unless an applicant complies with seven specific siting criteria, see 310 Code Mass. Regs. § 15.213(2):

> "No soil absorption system shall be constructed in a velocity zone on a coastal beach, barrier beach, or dune, or in a regulatory floodway, unless:
>
> > "(a) the system is to serve a building or buildings that were in existence on March 31, 1995 or reconstruction of such building or buildings where allowed in accordance with the wetlands protection act and [its implementing regulations] 310 [Code Mass. Regs. §§] 10.00;
> >
> > "(b) there is no increase in design flow from such building or buildings;

---

[9]The FHR supplied in the record contain no definition of "septic system leaching facility." We assume that the definition of "soil absorption system" in the State regulations is sufficient for purposes of analysis in this case of both the State and the local regulations. See 310 Code Mass. Regs. § 15.002 (1995) (a "system of trenches, galleries, chambers, pits, field[s] or bed[s] together with effluent distribution lines and aggregate which is installed in appropriate soils to receive effluent from a septic tank and transmit it to the soil interface for treatment in a biological mat and disposal to the underlying soil").

[10]SPD argues that the FHR do not authorize variance from the coastal dune prohibition. We are persuaded that they do, despite some language ambiguity.

[11]See note 9, *supra.*

"(c) no connection to a public sewer or shared system is available;

"(d) the owner or applicant cannot site the system elsewhere;

"(e) the septic tank or humus/composting toilet is sited outside of the velocity zone or regulatory flood-way, either horizontally or vertically;

"(f) the system achieves required separation from high groundwater elevation required by 310 [Code Mass. Regs. §] 15.212; and

"(g) any portion of the soil absorption system that is within the velocity zone or regulatory floodway is a leaching bed or trench system or any other system constructed in accordance with the wetlands protection act and 310 [Code Mass. Regs. §§] 10.00."

In addition to these seven criteria, Title 5 requires the applicant to comply with the two-part variance test in 310 Code Mass. Regs. § 15.410 (1995), which provides, in pertinent part:

"(1) . . . Variances shall be granted only when, in the opinion of the approving authority:

"(a) The person requesting a variance has established that enforcement of the provision of 310 [Code Mass. Regs. §§] 15.000 from which a variance is sought would be manifestly unjust, considering all the relevant facts and circumstances of the individual case; and

"(b) The person requesting a variance has established that a level of environmental protection that is at least equivalent to that provided under 310 [Code Mass. Regs. §§] 15.000 can be achieved without strict application of the provision of 310 [Code Mass. Regs. §§] 15.000 from which a variance is sought.

"(2) With regard to variances for new construction, enforcement of the provision from which a variance is sought must be shown to deprive the applicant of substantially all

beneficial use of the subject property in order to be manifestly unjust."[12]

3. *Prior proceedings*. a. *The administrative record*. The administrative record indicates that Soviero's existing septic system was installed in approximately 1974 and consists of a 1,000-gallon tank and a 400-square-foot leaching field to service an existing four-bedroom home and that the existing leaching field is in the northeast corner of the lot, ten feet from the adjoining lot line and twenty feet from the foundation of the house. The board's minutes indicate that on July 26, 2004, the variance requests were on the board's agenda proposing, among other things, "existing house to be demolished and reconstructed." A professional[13] appeared for Soviero, identified the specific variance requests, and represented that the existing house has four bedrooms and the reconstructed house also would have four bedrooms, but that the "reconstruction" would include "the placement of a 2,500 gallon septic tank and pump chamber with a pressure dosed leaching bed soil absorption system (SAS) for 4 bedrooms." Soviero's professional also represented that the square footage of the building would be increased by 400 square feet, but that no additional space would be used to create more than four bedrooms in total.

An attorney for SPD spoke and identified its principal concern as the placement of the new septic system. Then SPD's professional spokesperson[14] emphasized that appropriate legal authority (the conservation commission) had not yet confirmed delineations of protected resource boundaries.

---

[12]Furthermore, Title 5 defines "new construction" as:

"the construction of a new building for which an occupancy permit is required or an increase in the actual or design flow to any nonconforming system or to any other system above the existing approved capacity. New construction shall not include replacement or repair of an existing building totally or partially destroyed or demolished if there is no increase in flow or no increase in flow above the existing approved capacity to any system."

310 Code Mass. Regs. § 15.002 (1995).

[13]A representative from an engineering and surveying company. We do not decide as to the appropriate form of deed restriction, or whether one is required, pursuant to the definition of "bedroom" in 310 Code Mass. Regs. § 15.002 (1995).

[14]An engineer and land surveyor.

A few weeks later, Soviero's professional submitted revised plans to the board. He also reported his inspection of the existing building, represented that the new house is and would be a four-bedroom building, and offered his opinion that "there is not an increase in flow and that the variance should be allowed."

SPD's professional spokesperson noted the ambiguity as to whether Soviero proposed *demolition* and new construction of the dwelling or *reconstruction* of the existing dwelling, drawing the board's attention to enhanced Title 5 requirements for new construction. He also opined that the proposed system increased the design flow above the approved capacity and that Soviero's variance requests and plans did not comply with the applicable regulations. Specifically, he argued that the proposed plans showed an increase in bedrooms, which would calculate to a fifty percent increase in design flow to the septic system, and that the proposed elevations of the new system would create a hazard to SPD's adjacent property. He also unequivocally asserted that the proposed system is within a sand dune and, hence, prohibited by the FHR, and that removal of sand dune material significantly would reduce the ability of that dune to buffer flood waters, increasing the potential for storm damage to the SPD property.

b. *Board decision.* The board identifies its approval as a "local upgrade variance approval" under Title 5, and "local regulation variance approval" under the FHR, "to allow an upgrade to the existing subsurface sewage disposal facilities." The decision stated that the variances from both regulations were to "allow a soil absorption system to be located in a dune." The decision detailed the board's implicit finding that the existing dwelling contained four bedrooms, and explicitly prohibited an "increase [in] the number of bedrooms above four as a matter of right."[15] The decision did not address the seven siting criteria in 310 Code Mass. Regs. § 15.213(2), nor did the board address the two-part variance test required under 310 Code Mass. Regs. § 15.410(1) and (2). The board did not reference its own regulation under § 15.2(1)(1.0) which prohibits a septic system

---

[15]The board recited in its conditions that "[a]ny proposed increase in the number of bedrooms must receive prior approval from the [board]."

in a dune. Additionally, the decision failed accurately to describe the proposed system as totally new and in a different location.

4. *Standards for appellate review.* SPD appealed pursuant to the certiorari statute, G. L. c. 249, § 4, which is attendant to errors in proceedings where, as here, no other appeal route is provided. A Superior Court judge has authority to "correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff." *Carney* v. *Springfield*, 403 Mass. 604, 605 (1988). The judge in this case was to determine if the board committed error of law that "resulted in manifest injustice to the plaintiff." *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 511 (1983). Our role in this appeal is to decide whether the judge correctly determined that the administrative record showed no error of law that adversely affected SPD's material rights. *Ibid.*

Because the judge's decision is a ruling of law, and not a finding of fact or one that in some way involves evidence or credibility determinations, we give it no special deference. *Doe* v. *Superintendent of Schs. of Stoughton*, 437 Mass. 1, 5 (2002). See *Fieldstone Meadows Dev. Corp.* v. *Conservation Commn. of Andover*, 62 Mass. App. Ct. 265, 267 (2004) (appellate court gives no special weight to view of Superior Court judge in review under G. L. c. 249, § 4). See also *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979). In this case the judge's decision was based upon questions of law, and as in summary judgment, we review the same record that was before the judge. Our review is essentially de novo.

5. *Discussion.* SPD principally argues that the judge erred in ruling that the board was not required to specify any reasons or make findings in its decision. SPD also asserts error in the judge's conclusion that there was substantial evidence in the record for the board's decision. We will not consider the substantial evidence issue. Any such evaluation is premature because the board's decision does not permit competent judicial review, and the case must be remanded to the board for further proceedings or, at the very least, further explanation of its decision.

The board's decision is inadequate in several respects. First,

the board did not determine, as matter of fact, whether Soviero proposed a remodeling (reconstruction) of his home, as opposed to a demolition and new construction. That fact is pertinent to judicial review whether failure to grant the variance would "deprive the applicant of substantially all beneficial use." See 310 Code Mass. Regs. § 15.410(2). Second, the delineation of relevant resource area on Soviero's lot (including, but not limited to, coastal dune) is not clear[16] and there is no finding by the board in this regard. The board's decision fails to include an analysis of design flow, or whether Soviero can site the new system other than where proposed (for example, in the location of the old system).

Third, the groundwater siting criterion in 310 Code Mass. Regs. § 15.213(2)(f) is not addressed, nor is that in subsection (g), applicable to the construction of a soil absorption system within a velocity zone or regulatory floodway. Fourth, the board does not recite that Soviero has established that enforcement of 310 Code Mass. Regs. § 15.213(2) would be manifestly unjust and that a level of environmental protection at least equivalent to a fully compliant system, without variance, would be achieved. See 310 Code Mass. Regs. § 15.410(1). These regulations instruct sophisticated siting criteria, and these criteria are relevant to SPD's interests, as is evident here from the statements and the preamble of both State and local regulations.

We are persuaded by SPD's argument that it was error of law for the judge to excuse the board's failure to make additional findings or sufficiently to explain itself.[17] The authority of the board is broad. See *American Lithuanian Naturalization Club, Athol, Mass., Inc.* v. *Board of Health of Athol*, 446 Mass. 310, 317 (2006). However, competent judicial review of such decisions is often, as here, rendered difficult if not impossible by

---

[16]While we do not rule on the matter, it well may be that Soviero must undertake some proceedings before the local conservation commission pursuant to the Massachusetts Wetlands Protection Act and the Falmouth wetlands by-laws in order to provide a competent record of resource area with the board. For procedures as to a request for determination of applicability by a conservation commission, see 310 Code Mass. Regs. § 10.05(3)(a) (1997).

[17]We are not called upon to say, nor do we intimate, that detailed findings are necessary in all board variance or exception cases, but only that they are required here given the specific facts of this case.

the lack of specific findings and rationale for the agency decision. See *Oyster Creek Preservation, Inc.* v. *Conservation Commn. of Harwich*, 449 Mass. 859, 866 n.12 (2007). In this case the board's decision is insulated from scrutiny.[18]

6. *Disposition.* We vacate the judgment of the Superior Court. A new judgment is to enter annulling the board's granting of the variances and remanding the matter to the board for further proceedings consistent with this opinion.

*So ordered.*

---

[18]Soviero argues that no written findings are required of the board because "the [State] regulations at 310 [Code Mass. Regs. § 15.411(3) (1995)] do not require variance decisions to list formal written findings." Soviero argues that the absence of an explicit requirement for findings translates into a rule that no findings are required, and that this court is controlled by any such rule. We are not persuaded by the argument.