PAUL CORNELL *vs.* BOARD OF APPEALS OF DRACUT
& another.[1]

Suffolk. March 5, 2009. - May 22, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Zoning,* Variance, Lapse of variance, Building permit. *Statute,* Construction. *Words,* "Exercised."

In a Land Court action brought by a plaintiff landowner seeking a judgment declaring that a dimensional variance under G. L. c. 40A, § 10, never had lapsed, the judge correctly granted summary judgment in favor of the defendants, where, despite the advisement on the certificate granting him the variance, the plaintiff failed to record the variance and to obtain a building permit (or convey one of the lots) within one year of being granted the variance, and thereby caused the variance to lapse, and where the plaintiff failed to demonstrate that equitable tolling would be appropriate in the circumstances. [890-895]

CIVIL ACTION commenced in the Land Court Department on December 15, 2003.

The case was heard by *Alexander H. Sands,* J., on motions for summary judgment, and a motion to alter or amend the judgment was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Justin Perrotta* for the plaintiff.

*James P. Hall* (*Raymond T. Weicker* with him) for the defendants.

*Ilana M. Quirk,* for Massachusetts Chapter of the American Planning Association, amicus curiae, submitted a brief.

SPINA, J. This zoning case requires us to decide the actions a variance holder must take to "exercise" a dimensional variance under G. L. c. 40A, § 10, to prevent it from lapsing.[2]

---

[1]Building inspector of Dracut.

[2]We acknowledge the amicus brief submitted in support of the defendants by the Massachusetts Chapter of the American Planning Association.

The plaintiff, Paul Cornell, owns a fourteen-acre lot in Dracut. He proposed a plan to divide the property into two parcels, with the intention of erecting a home on the smaller of the two parcels. Because the frontage on that parcel was twenty-five feet less than the minimum frontage required by the Dracut zoning by-laws, a variance was necessary. On March 7, 2002, the board of appeals of Dracut granted Cornell a variance. The certificate granting Cornell a variance contained an advisement stating that G. L. c. 40A, § 11, provides that the variance shall not take effect until it is recorded in the registry of deeds for the county and district in which the land is located.

Cornell belatedly set out to obtain approvals from the planning board, the board of health, and the conservation commission, all of which were prerequisites for a building permit. To this end, Cornell hired a registered land surveyor to prepare an "approval not required" plan (ANR), see G. L. c. 41, § 81P, which subsequently was filed with the planning board, and approved and indorsed on August 14, 2002. Cornell then retained Norse Environmental Services, Inc. (Norse), to prepare septic and wetlands delineation plans. Norse began testing the soil in November, 2002, and submitted a septic plan to the board of health on February 14, 2003. At some point in early 2003, Cornell applied for an order of conditions from the conservation commission. By March 7, 2003, the anniversary of the issuance of his variance, the board of health and the conservation commission continued proceedings concerning Cornell's applications several times, and had not issued any decision concerning Cornell's applications.

On May 7, 2003, the conservation commission issued an order of conditions, and on June 12 the board of health approved Cornell's septic plan. By this time, Cornell had expended more than $15,000 in seeking all three approvals. In the same month, Cornell applied for a building permit, but was told by the defendant, Frank Polak, a building inspector, that his application would be denied on the ground that the variance had lapsed due to Cornell's failure to apply for a building permit within one year of the grant of the variance. Polak told Cornell that he either had to seek an extension of the variance or reapply for the variance in order to obtain a building permit. On June 16, 2003, Cornell requested an extension from the board of appeals, which was

denied as untimely.[3] Cornell then reapplied for a variance. His application was denied on November 13. In December, Cornell commenced the present action in the Land Court seeking, inter alia,[4] a declaratory judgment that the original variance never had lapsed.

Cornell recorded the variance, which allegedly had lapsed, on January 16, 2004, in the Middlesex County northern district registry of deeds. See G. L. c. 40A, § 11, fifth par.

On Cornell's motion for summary judgment, a judge in the Land Court ruled that the variance did never "take effect," G. L. c. 40A, § 11, fifth par., because it was not timely recorded. Consequently, he reasoned, the variance could not be exercised under G. L. c. 40A, § 10, to prevent it from lapsing. The judge further concluded that, in any event, Cornell had failed to demonstrate that he exercised the variance by March, 2003, because he had neither acquired a building permit nor conveyed one of the lots in reliance on the variance. After judgment entered for the defendants, Cornell moved to alter or amend the judgment, arguing, among other things, that G. L. c. 40A, § 11, did not require a variance holder to record the variance in order to exercise it under G. L. c. 40A, § 10. That motion was denied, and Cornell appealed. The Appeals Court affirmed. See *Cornell* v. *Board of Appeals of Dracut*, 72 Mass. App. Ct. 390 (2008). We granted Cornell's application for further appellate review and affirm the judgment.

We conclude that Cornell did not exercise his variance under G. L. c. 40A, § 10, within one year of its issuance. General Laws c. 40A, § 10, provides, in relevant part: "If the rights authorized by a variance are not exercised within one year of the date of grant of such variance, such rights shall lapse . . . ."[5] This section, intended "to eliminate to some degree the current confusion

---

[3]General Laws c. 40A, § 10, third par., authorizes the board of appeals, in its discretion, to extend by not more than six months the time in which to exercise a variance, provided the application therefor is filed before the expiration of one year from the date the variance was granted.

[4]Cornell also sought review of the denial of his second application for a variance, see G. L. c. 40A, § 17, but failed to pursue that claim below and does not raise it now.

[5]We note that G. L. c. 40A, § 9, fourteenth par., states that special permits "shall lapse [after expiration of the period of time set forth in the ordinance or

regarding status of land within municipalities," 1973 House Doc. No. 6200, at 20; see *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne*, 14 Mass. App. Ct. 76, 81-83 (1982) (outlining legislative history of G. L. c. 40A, § 10), ensures the prompt utilization of duly granted variances.

The statute does not define "exercised." Where a statute does not define a particular word, "the natural import of words according to the ordinary and approved usage of the language when applied to the subject matter of the act, is to be considered as expressing the intention of the Legislature." *Boston & Me. R.R.* v. *Billerica*, 262 Mass. 439, 444 (1928). "Exercise" means "to bring into play: make effective in action . . . bring to bear." Webster's Third New Int'l Dictionary 795 (1993).

We agree with the Land Court judge that under G. L. c. 40A, § 11, fifth par., which is set out in relevant part in the margin,[6] a variance does not "take effect" until it is recorded and that the recording of a variance within one year of its grant is necessary to "exercise" it. The ordinary meaning of the phrase "take effect" is "to become operative." Webster's Third New Int'l Dictionary, *supra* at 2331. Thus, the variance could not become operative, and by implication, could not be exercised, until it was recorded. Here, despite the advisement on the certificate granting him a variance, Cornell failed to record the variance within one year of its grant, and thereby caused the variance to lapse.[7]

Even if the variance had been recorded timely, we would nonetheless conclude that Cornell's actions fell short of "exercising" the variance. We agree with the Land Court judge and the

bylaw] if a substantial use thereof has not sooner commenced except for good cause or, in the case of permit for construction, if construction has not begun by such date except for good cause."

[6]Section 11, fifth par., provides, in relevant part: "No variance, or any extension, modification or renewal thereof, *shall take effect* until a copy of the decision bearing the certification of the city or town clerk that twenty days have elapsed after the decision has been filed in the office of the city or town clerk and no appeal has been filed . . ." (emphasis added).

[7]We leave for another day whether the failure to record a variance may void a variance on which a variance holder substantially has relied. Cf. *McDermott* v. *Board of Appeals of Melrose*, 59 Mass. App. Ct. 457 (2003) (failure to record special permit not fatal where plaintiff substantially used special permit). Here, Cornell did not substantially rely on the variance because he did not sell either lot or engage in construction on the lot for which the variance was granted.

Appeals Court, that at the very least, in addition to recording the variance, Cornell needed to obtain a building permit or convey one of the lots in reliance on the variance. *Cornell* v. *Board of Appeals of Dracut*, 72 Mass. App. Ct. 390, 393 (2008), citing *Hogan* v. *Hayes*, 19 Mass. App. Ct. 399, 404 (1985). Without a building permit or a conveyance of one of the lots, Cornell did not utilize the variance, or "make [it] effective in action," because he did not undertake any action on the lot necessitating the variance.

Cornell contends that because the variance was a prerequisite for the ANR indorsement,[8] he "exercised" the variance. We disagree. The ANR indorsement conferred no right on Cornell to use the variance. The ANR indorsement serves merely to permit the plan to be recorded, see *Cricones* v. *Planning Bd. of Dracut*, 39 Mass. App. Ct. 264, 268 (1995), and is not an attestation of compliance with zoning requirements. See *Hamilton* v. *Planning Bd. of Beverly*, 35 Mass. App. Ct. 386, 389 (1993); *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 603 (1980). An ANR indorsement, like an approval from a board of health, conservation commission, or similar entity, is, in this

---

[8]An "approval not required" (ANR) indorsement "shall not be withheld unless such plan shows a subdivision." G. L. c. 41, § 81P. A "subdivision" is:

> "[T]he division of a tract of land into two or more lots . . . provided, however, that the division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the meaning of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on (*a*) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or (*b*) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (*c*) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon. *Such frontage shall be of at least such distance as is then required by zoning or other ordinance or by-law*, if any, of said city or town for erection of a building on such lot, and if no distance is so required, such frontage shall be of at least twenty feet" (emphasis added).

G. L. c. 41, § 81L.

case, essentially preliminary to the issuance of a building permit or a conveyance. Cf. *Smith* v. *Board of Appeals of Brookline,* 366 Mass. 197, 201 (1974) (not every expenditure of time, effort, and money is enough to qualify as construction for purposes of exercising special permit). A building permit, in contrast, authorizes a variance holder, such as Cornell, to build on the nonconforming lot and thus is the culmination of the permitting process that allows him to utilize that lot in a way that otherwise does not conform with the applicable zoning provisions. Our conclusion gains support from the fact that a building permit is needed to grandfather this variance against a subsequent zoning change. See G. L. c. 40A, § 6, first par. With respect to a conveyance of less than the original parcel, i.e., a conveyance of one of these lots, an ANR indorsed plan is a prerequisite to recording a deed. See G. L. c. 183, § 6A. Therefore, it was necessary for Cornell to have obtained a building permit or convey one of the lots to realize the benefits of the variance.

Circumstances beyond a variance holder's control may make obtaining a building permit within one year of the grant of a variance impossible and thus warrant equitable tolling of the one-year period. However, reasonably avoidable impediments to obtaining a building permit will preclude equitable tolling. See *Smith* v. *Board of Appeals of Brookline, supra* at 202 (statutory six-month period to begin construction not tolled where owner who ultimately abandoned special permit could have resolved litigation over special permit earlier). In order to demonstrate that equitable tolling is warranted, a variance holder must show that the holder has timely sought an extension of the variance, see G. L. c. 40A, § 10, third par., and that delays clearly attributable to others have hampered the holder's efforts to obtain a building permit. Cf. *Belfer* v. *Building Comm'r of Boston,* 363 Mass. 439, 444 (1973) (two-year period in which variance had to be used under zoning code tolled where appeal from granting of variance created "real practical impediments to use of a [variance]"). Cf. also *Smith* v. *Board of Appeals of Brookline, supra* at 201 ("real practical impediments" caused by litigation may toll six-month statutory period to begin construction pursuant to special permit).

Cornell has not demonstrated that equitable tolling would be

appropriate in this case. Cornell did not seek an extension of the variance until several months after the expiration of the one-year period. He has also failed to establish that the delays in obtaining the approvals necessary for a building permit were not reasonably avoidable. Although the board of health and the conservation commission continued proceedings concerning Cornell's applications several times, nothing in the record on appeal explains why Cornell waited until *after* he received the ANR indorsement in August, 2002, to hire Norse to prepare a septic plan and a wetlands delineation plan. Nothing prevented Cornell from simultaneously seeking all three approvals immediately after, and in some cases before, the variance was granted. Furthermore, while it is unclear when Cornell submitted his request for an order of conditions to the conservation commission in 2003, he did not submit the septic plan to the board of health until February 14, 2003. He could not have reasonably expected the board of health to review and approve his application in a mere three weeks' time. In these circumstances, Cornell's expenditures in seeking the requisite approvals for a building permit do not offset his unexplained delay in seeking those approvals.

In sum, at the very least, Cornell should have recorded the variance and obtained a building permit within one year of being granted the variance to prevent it from lapsing.[9] We recognize that delays in fulfilling the prerequisites for a building permit may occur notwithstanding a variance holder's diligence. In those circumstances, the one-year period in which a variance holder must "exercise" the variance may be equitably tolled if, in addition to establishing that such delays were not reasonably avoidable, the variance holder seeks an extension of the variance in a

---

[9]This decision is not intended to resolve all questions concerning timely exercise of a variance. For example, a "use" variance may not require any construction or excavation, and a building permit may not be necessary to exercise such a variance. Evidence of "use" within one year of issuance of the variance may be sufficient to exercise such a variance. Here, construction of a house on a nonconforming lot was sought, hence the need for a building permit. Cf. G. L. c. 40A, § 9, fourteenth par. (relating to special permits). We note that unlike G. L. c. 40A, § 9, fourteenth par., which requires the commencement of construction to prevent a special permit from lapsing, the Legislature has not required commencement of construction as a prerequisite for "exercise" of a variance.

timely fashion. See G. L. c. 40A, § 10, third par. However, variances are generally disfavored, see *Planning Bd. of Nantucket* v. *Board of Appeals of Nantucket*, 15 Mass. App. Ct. 733, 738 (1983), and where, as here, a variance holder has not timely applied for an extension of the variance and failed to provide a reason for not diligently pursuing the approvals necessary for a building permit, the one-year period is not tolled.

*Judgment affirmed.*