NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-656

KENNETH MACDONALD & another[1]

vs.

KRISTEN KAZOKAS & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Kenneth MacDonald,[3] appeals from a decision of a Superior Court judge affirming a decision of the board of health of Littleton (board) granting a permit and variance for construction of a new subsurface disposal system (septic permit) to the defendant, Kristen Kazokas. We affirm the judgment.

Background. Septic systems in the Commonwealth are regulated by 310 Code Mass. Regs. § 15.000, known as Title 5, and local approving authorities are charged with issuing disposal system construction permits. See 310 Code Mass. Regs. § 15.003(2) (2014). "Local approving authorities may enact more

---

[1] Jodi MacDonald.

[2] Board of Health of Littleton.

[3] Although the notice of appeal identifies both Kenneth and Jodi MacDonald as appellants, Jodi MacDonald has not entered her appeal and has not participated in this appeal.

stringent regulations to protect public health, safety, welfare and the environment."  310 Code. Mass. Regs. § 15.003(3).  Here, regulations adopted by the board in 2013 include regulation 27, a local, "more stringent" regulation, which provides that "[n]o portion of a fill requirement for a subsurface sewage disposal system shall be within 10 feet of a property line."  The focus of this appeal is on whether the board properly granted Kazokas a variance from regulation 27.

Kazokas's parcel contains six acres and abuts MacDonald's parcel.  The current structure on Kozakas's property is served by an outhouse.  In 2014, the board granted Kazokas a septic permit and a variance from regulation 27 for a four-bedroom home on the property; there was no appeal from the board's 2014 decision.

In 2017, Kazokas obtained an order of conditions from the conservation commission for installation of a septic system, an upgrade to the existing driveway, and possible further expansion of the existing cottage, based on a plan dated July 24, 2017.  When the commission's decision was appealed, however, Kazokas sought and received a one-year extension of the 2014 septic permit, extending its expiration date to September 16, 2018.[4]  A

---

[4] Although the local regulations are silent as to the expiration of a disposal system construction permit, 310 Code Mass. Regs. § 15.020(2) (2014), provides that such permits expire if

2

few days before that date, Kazokas sought a "stay" of the septic permit from the board, at its September 11, 2018, meeting. The board's chair had notified MacDonald in advance of that meeting that Kazokas was on the agenda; MacDonald could not attend but urged the board in writing not to allow the permit extension.[5] At the September 11, meeting, after a discussion with Kazokas and her attorney, the board indicated it had no power to issue a stay, but suggested Kazokas file a new application for a septic permit -- relying on the same 2014 plan. Kazokas did so and on September 25, 2018, there was a public hearing on the request. Her application requested a variance from regulation 27, stating:

> "[t]he area on my property suitable for a soil absorption system is constrained by the presence of wetlands and Fort Pond. The soil absorption system has been located to be offset from the wetlands which require it to be 17.6' from the property line. Offsetting the system from the estimated seasonable high groundwater requires fill and a wall to be located within 10 feet of the property line."

---

construction is not completed and a certificate of compliance obtained within three years of issuance of the final approval. A single one-year extension may be granted on the applicant's written request outlining the facts that prevented timely completion. 310 Code. Mass. Regs. § 15.020(3).

[5] MacDonald's written submission urging the board not to allow a permit extension indicated that due to changes in the wetlands delineation, Kazokas had submitted a new engineering plan to the Department of Environmental Protection (DEP), which "alter[ed] the location of the fill and retaining wall" compared to the 2014 plan.

Under local regulations, the board may grant a variance from its regulations when, in the opinion of the board, "the enforcement thereof would do manifest injustice, and the applicant has proven that the same degree of public health and environmental protection required under these regulations can be achieved without strict application of a particular provision(s)."[6]  The board's agent, whose comments were read aloud at the September 25, 2018, public hearing on the new permit application, wrote:

> "The permit for the septic system has expired and the applicant has reapplied to obtain a new permit for the site.  I reviewed the plans and find they are in compliance with Title 5 and your regulations, except the design proposes fill within the 10 feet of the lot line and proposes the use of retaining wall and barrier to contain the fill.
>
> "I don't have an issue with the request as the use of the retaining wall will allow the surface runoff from the site grading to be directed onto the applicant's property."

At the hearing, MacDonald spoke.  He contended that the wetlands survey was off by eight to twelve feet and asked that the board defer its decision until the hearing at the DEP the following month.  The board responded that the conservation commission was concerned with the wetlands boundaries, and the board could only act on the information it had from the

---

[6] The board's regulations require variance requests to be in writing to the board and provides that the board "shall grant, modify, or deny a variance in writing."

4

conservation commission -- and the information the board had received was that the wetlands delineation remained the same. MacDonald also argued that Kazokas had not shown that enforcement of regulation 27 "would do manifest injustice to prevent her from substantially all beneficial use of the subject property." One board member indicated that the manifest injustice would be to deny a variance when it had previously been granted. MacDonald also argued that the limits of work had not been delineated in accordance with regulation 23B. At the end of the hearing, the board voted to approve the variance and the permit.

The MacDonalds sought review in the Superior Court pursuant to G. L. c. 249, § 4, arguing that the board's decision was not based on substantial evidence because the applicant did not present the 2018 plan, and also that the board did not consider whether enforcement of regulation 27 would cause manifest injustice or whether the proposed plan achieved the same degree of public health and environmental protection. The judge rejected those arguments, denied the MacDonalds' motion for judgment on the pleadings, and affirmed the variance. This appeal followed.

Discussion. Appeal from a board of health's decision on a septic permit application is by certiorari. Robinson v. Board of Health of Chatham, 58 Mass App. Ct. 394, 395 n.4 (2003).

5

Pursuant to G. L. c. 249, § 4, a Superior Court judge may "correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff." Macero v. MacDonald, 73 Mass. App. Ct. 360, 366 (2008), quoting Carney v. Springfield, 403 Mass. 604, 605 (1988). "The judge in this case was to determine if the board committed error of law that 'resulted in manifest injustice to the plaintiff.' . . . Our role in this appeal is to decide whether the judge correctly determined that the administrative record showed no error of law that adversely affected [MacDonald's] material rights" (citation omitted). Macero, supra. We give "no special deference" to the judge's decision. Id. "[O]ur review is limited at most to whether the [board]'s decision is supported by substantial evidence in the administrative record, whether the [board]'s action was arbitrary and capricious, and whether the [board] committed an abuse of discretion or other error of law." Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733-734 (2018).

On appeal, MacDonald makes three arguments: (1) the judge disregarded substantial evidence in the record; (2) Kazokas failed to demonstrate that she met the requirements for a

variance under the local regulations;[7] and (3) the judge impermissibly substituted his own reasoning for that of the board.

MacDonald's first argument centers on what he sets forth as irregularities in the proceedings. He contends that Kazokas was allowed unlimited time and access to the board at the September 11, meeting and, in essence, was able to garner the sympathy of the board -- as evidenced by some members' statements that they would like to help her out and she should submit a new application. One member said that because the variance had been approved before, "it would likely be approved again."[8] Nonetheless, the board declined to issue a stay and told Kazokas that she would have to apply for a new permit. The board offered no procedural shortcuts and made no promises.

---

[7] Certiorari is "available to persons, including abutters, who can establish 'injury to a protected legal interest.'" Walpole Country Club v. Board of Health of Sharon, 72 Mass. App. Ct. 913, 914 (2008), quoting Friedman v. Conservation Comm'n of Edgartown, 62 Mass. App. Ct. 539, 543 (2004). See Hickey v. Conservation Comm'n of Dennis, 93 Mass. App. Ct. 655, 657 (2018). Kazokas did not challenge MacDonald's standing; MacDonald contends in his reply brief that stormwater will be directed onto his property and ultimately to Fort Pond. Given the result we reach, we assume without deciding that MacDonald has standing to challenge the variance. But see Walpole Country Club, supra (abutters failed to make sufficient showing that siting of septic system threatened their protected interest or material rights).

[8] We agree that a board member calling Kazokas "honey" was inappropriate and caution against use of such terms in governmental proceedings.

7

MacDonald contends that the subsequent public hearing on the new application was tantamount to a formality and that the board had already decided to issue the permit as suggested by the tenor of the September 11, meeting. In our view, it was not unreasonable for the board to suggest that if the property had qualified in 2014, it was likely to qualify in 2018.[9] Further, to be sure, the board expressed sympathy for Kazokas because her 2014 sewer permit would expire during the course of a different administrative appeal. The board's collective instinct that there was something unfair about Kazokas's predicament finds some support in the case law where, in certain circumstances, when "delays clearly attributable to others have hampered the holder's efforts to obtain a building permit," the expiration date of a zoning variance has been equitably tolled. Cornell v. Board of Appeals of Dracut, 453 Mass. 888, 893 (2009). We do not go so far as to say that equitable tolling could or should have applied here, particularly where Kazokas did not seek an order of conditions for over two years after she received the septic system permit and variance; we simply point out that our law is not completely insensitive to the difficulties in obtaining multiple local and State permits, and we cannot expect

---

[9] There is no suggestion that the criteria for a variance had changed between 2014 and 2018.

8

the board to avoid all expression of sympathy at what can be lengthy and difficult governmental processes.

Despite statements of sympathy, however, the board declined to grant a stay and specifically refused to vote on any topic because its "discussion" did not occur in a public hearing. The board required Kazokas to submit a new application and go through the public hearing process at which MacDonald could and did participate. We agree with the judge that "isolated comments are not sufficient to rebut the 'presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare,'" quoting LaPointe v. License Bd. of Worcester, 389 Mass. 454, 459 (1983).

We have reviewed the transcript and notes from the public hearing closely. Although MacDonald asserted that the 2018 plan differed from the 2014 plan, he did not offer the 2018 plan to the board, and it is not in the record before us. And, although he argued that the wetlands delineation had changed, the board noted that the "Conservation Commission shared that the wetlands line on their plan is what had been approved by them . . . and is the same as . . . the Board of Health plan currently up for consideration." Perhaps most importantly, it is the 2014 plan that was approved by the board. To the extent the design or location of the retaining wall differs significantly between the

9

2014 plan and the 2018 plan or the 2018 plan differs in other material ways, the board approved the location of components in the 2014 plan; Kazokas may not relocate septic components or otherwise deviate materially from the 2014 plan without the board's approval.  See 310 Code Mass. Regs. § 15.020.

MacDonald next asserts that Kazokas did not prove that she was entitled to a variance; that is, she did not show manifest injustice from enforcement of regulation 27 and did not show that the same level of protection has been provided.  The record, however, contains the 2014 discussions of alternative locations for the septic system, and no feasible location was identified that would not also require a variance.  In addition, in both 2014 and 2018, the board's agent expressed his satisfaction with the plan because the retaining wall would keep surface waters on the Kazokas property.  The board's implicit conclusions that manifest injustice would result from enforcement of regulation 27 and the system achieves the same degree of public health and environmental protection was supported by substantial evidence and not arbitrary or capricious.  See Delapa, 93 Mass. App. Ct. at 733-734.[10]

---

[10] MacDonald has not suggested that Kazokas's septic system would cause a private nuisance or trespass, though those avenues of relief potentially would be available should such injuries occur in the future.  See Rattigan v. Wile, 445 Mass. 850, 856 (2006) (private nuisance); Amaral v. Cuppels, 64 Mass. App. Ct. 85, 91 (2005) (trespass).

10

Finally, MacDonald argues that the judge substituted his analysis for the board's -- that the board concluded that the applicant was entitled to a variance simply because she had qualified for one in 2014.  While we agree that a standard that would allow granting a variance because a variance had been granted previously is untenable as it would in effect negate the expiration date mandated by State regulations, in the absence of material change in facts or law, it is in fact likely the applicant would again qualify.  Acknowledging this reality does not mean that the board predetermined the outcome.  Substantial evidence existed in the record to support the board's decision.

<u>Judgment affirmed</u>.

By the Court (Massing,
  Henry & Brennan, JJ.[11]),

*Joseph F. Stanton*

Clerk

Entered:  November 22, 2023.

---

[11] The panelists are listed in order of seniority.